GRANT A. PORTER, APPELLANT, V. ROSCOE BLACK,
APPELLEE.

289 N. W. 2d 760

Filed March 11, 1980. No. 42652.

Knudsen, Berkheimer, Beam, Richardson & Enda-
cott, for appellant.

Alan E. Peterson of Cline, Williams, Wright, John-
son & Oldfather, for appellee.

Heard before BOSLAUGH, McCOWN, CLINTON, and
WHITE, JJ., and WOLF, District Judge.

CLINTON, J.

This is an action for damages for personal injuries
sustained by the plaintiff, Grant A. Porter, in a colli-
sion of two automobiles on Interstate 80 near the
Gretna interchange, before daylight on the morning
of January 4, 1977. Porter was driving his car, a
Volkswagen, northeasterly when it collided with the
Cadillac of the defendant, Roscoe Black, which was
unoccupied, standing sideways on the highway
blocking the outside eastbound traffic lane and per-
haps extending somewhat into the inside lane. It
had come to rest a short time earlier in that position

following a skid and collision with a guardrail adjacent to the highway.

The trial judge submitted to the jury the issues of defendant Black's negligence in the following respects: "1. He left his vehicle standing on a freeway without legal excuse. 2. He failed to provide reasonable warning to the plaintiff of the obstruction of the highway by his vehicle." The issues on the plaintiff Porter's contributory negligence were as follows: "1. He failed to keep a proper lookout; 2. He failed to keep his vehicle under reasonable control; 3. He was operating his vehicle at the time of said collision at a speed excessive under all the conditions and circumstances and in violation of the statutes pertaining to speed on the interstate highway in effect at that time." The jury found for Black and Porter appeals. We affirm.

The principal claim of error is that the court should have submitted to the jury the issues of Black's negligence claimed to have caused his car to skid, to wit, failure to maintain a proper lookout and failure to keep his vehicle under proper control. These allegations of negligence, which we will hereafter refer to as antecedent negligence, had been stricken from the petition before trial on motion of Black. After the evidence was completed the court refused to permit the amendment of the petition to include these claims of negligence.

Some further reference to the pleadings and recital of the evidence is necessary to an understanding of the arguments of the parties and our holding.

At the time of the accident there was snow on the highway. Visibility was, to some extent, restricted by falling or blowing snow. Black testified that he had been traveling at a speed of about 30 miles per hour when he observed an auto approaching from the rear at a much greater rate of speed. He stated that the approaching car appeared to be fishtailing, so he moved as far to the right as he could. As the

car was in the act of passing, it struck his car lightly, causing it to skid and go out of control.

After Black's car came to rest against the guardrail, the motor was not running. After two or three unsuccessful attempts to start the motor, he observed the lights of approaching automobiles from the southwest. He then got out of the car and ran southwesterly about 75 to 100 meters along the side of the highway and waved his arms to warn approaching traffic. Two occupants of one car observed the signal and passed safely to the left without difficulty. They then stopped and began to back up for the purpose of offering assistance. The driver of that car, which according to his estimate had been traveling at a speed of 50 to 55 miles per hour, testified that he saw the stalled vehicle before he passed Black, whom he observed waving his arms. He estimated that when he saw the stalled car he was 75 to 150 feet from it. He further testified that after he stopped his car about a "city block" beyond the stalled car and while he was backing up, he saw the headlights of Porter's car approaching. A passenger in the backing car and Black both testified that one or two other vehicles, including a truck, also passed safely. It was after that that Porter's car collided with the standing vehicle.

Black testified that when his car came to rest after the skid, its rear touched the guardrail and its front extended into the right-hand outside eastbound lane of traffic but not at all into the left-hand eastbound lane. Porter, on the other hand, testified that it blocked part of the left-hand lane as well. He also testified that because of the slick surface of the highway he was traveling only about 35 miles per hour. Porter stated he could see a "good 150 feet" ahead and that there was no change in the snowstorm during the time immediately before the accident. He described the snowstorm as moderate. Porter stated he did not see Black by the side of the high-

way, nor Black's car, since it was snow-covered and blended with the background. The head, tail, side, and interior lights of Black's car were unlit. He said that on that account he could not see Black's vehicle until he was within 15 yards of it and was unable to stop or turn aside in time to avoid the collision.

The driver of the car which passed safely and then stopped testified the lights of Black's car were unlit. A highway patrolman testified that Black's car was white over green in color and at the time of his investigation, some time after the collision, the automobile had snow on it. Black thought the head, tail, and side lights were lit on his car, but he was not certain. He did not claim that he had turned on the interior lights or the warning flashers.

An accident reconstruction expert called by Porter identified the items of damage done to Black's car by the collision with the guardrail and the damage caused by the collision with Porter's car. He could not identify any marks or damage made by a prior collision and could not give an opinion as to whether or not such a prior accident had occurred.

The marks made by the contact with the steel-cable guardrail (which consisted of three steel cables a few inches apart attached to steel posts), were on the front and left side of the car. The expert's opinion, based upon his examinations of the two vehicles after the accident, was that the Volkswagen (Porter's automobile) hit the Cadillac (Black's automobile) at the left front wheel. The two cars then rotated and contact was made between the right side of the Volkswagen and the left rear fender of the Cadillac. The Volkswagen then bounced off and came to rest in the median. The Cadillac came to rest on the right shoulder of the highway adjacent to the guardrail. There was no damage to the right side of the Cadillac.

The photograph exhibits indicate severe damage

to the front of the Volkswagen, the most severe damage being on the right front. The principal damage to the Cadillac was apparently done by the collision with the Volkswagen. Damage done by the guardrail consisted of indentations or gouges corresponding to the spaces between the cables of the guardrail or the bolts on its posts. There was no testimony that the guardrail was damaged.

The petition alleged, among other things, that at the time of the collision, Black's car was parked on the highway and that before it had come to rest across the traffic lanes, Black either lost control of his vehicle or had struck an unidentified vehicle. Porter claimed that Black's vehicle was illegally parked on the highway in violation of the provisions of section 39-670, R. R. S. 1943. Black claimed that his car was unavoidably stalled and disabled on the highway and he thus came within the exceptions of subsection (4) of section 39-670, R. R. S. 1943.

The trial court properly instructed the jury on these claims, placing the burden of proof on Black to show he came within the exception. See Fleischer v. Rosentrater, 190 Neb. 219, 207 N. W. 2d 372. No complaint is made of the instructions on the other issues which were submitted to the jury.

The arguments of the parties focus upon the applicability of the holding of this court in Doleman v. Burandt, 160 Neb. 745, 71 N. W. 2d 521, to the evidence in this case. There we said: "Where plaintiff's automobile is standing still in the highway when defendant, driving on icy pavement in a blinding snowstorm, first sees it, the only issue on contributory negligence of the plaintiff is whether plaintiff should have, under the circumstances, removed his car from the pavement or given warning. . . . Under such circumstances, instructing the jury that it was the duty of the plaintiff to keep a reasonably careful lookout, to operate his vehicle at such a speed and keep it under such control that he could

plainly see what was visible before him, and to so drive that when he saw an object in his path he could stop in time to avoid it, is prejudicially erroneous.''

Black argues that under the principle announced in Doleman v. Burandt, *supra,* the specifications of antecedent negligence are not submissible where his vehicle was stopped unoccupied rather than being operated at the time of the collision and, therefore, the rulings of the trial court were proper.

Porter argues that the principles announced in Doleman v. Burandt, *supra,* are unsound and, even if correct as applied to the facts of that case, are inapplicable to the evidence here.

He makes two principal points. First, he urges that the holding in Doleman v. Burandt, *supra*, is unsound because it characterizes a stalled automobile as a "condition" rather than a "cause" without regard to whether the reason the car is parked on the highway results from the operator's negligence or some unavoidable reason. Secondly, he points out that subsection (4) of section 39-670, R. R. S. 1943, provides as follows: "This section shall not apply to the driver of any vehicle which is disabled while on the roadway in such manner and to such extent that it is *impossible to avoid stopping* and temporarily leaving such disabled vehicle in such position." (Emphasis supplied.) Therefore, if either failure to maintain a proper lookout or failure to keep the vehicle under control was the cause of the skidding, collision with the guardrail, and stalling of Black's car, then it was not "impossible to avoid stopping" within the purview of section 39-670 (4), R. R. S. 1943, and no legal excuse would exist for stopping. Hence, Porter contends he was entitled to have the issues of antecedent negligence submitted to the jury on the issue of whether the exception of section 39-670 (4), R. R. S. 1943, was applicable.

We find it unnecessary to confront the arguments made by the parties because, even if Doleman v.

Burandt, *supra*, is inapplicable, we are convinced, after a careful examination of the record, that the evidence was insufficient to submit to the jury the claims of antecedent negligence on the part of Black.

The basic principles are well summarized by this court in Fincham v. Mueller, 166 Neb. 376, 89 N. W. 2d 137, where we said: " 'Negligence is [ordinarily] a question of fact and may be proved by circumstantial evidence. All that the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of.' Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112.

"But, of course, negligence is never presumed. The burden of proving negligence is on the party alleging it and merely establishing that an accident happened does not prove it. Wolcott v. Drake, 162 Neb. 56, 75 N. W. 2d 107. Nor can a verdict be based on conjecture or surmise. Bowers v. Kugler, 140 Neb. 684, 1 N. W. 2d 299. As stated in Price v. King, 161 Neb. 123, 72 N. W. 2d 603: 'Negligence must be proved by direct evidence or by facts from which such negligence can be reasonably inferred. In the absence of such proof, negligence cannot be presumed.' "

There is no evidence in the record from which it may be inferred that Black failed to maintain a proper lookout, or that such failure is what caused his car to go out of control, strike the guardrail, and thus stall on the highway. To allow such an inference would be wholly conjectural. There is no evidence, direct or circumstantial, that he failed to observe something which, had it been seen, would have avoided the skid.

This leaves the remaining allegation that Black negligently lost control of his car. That it did skid and strike the guardrail is admitted. Even if Black's

explanation be disregarded, we are left with the lone evidentiary fact that the car did skid on a somewhat slick highway. Is that alone sufficient to support an inference that the skid was negligently caused, i.e., that Black did something or failed to do something in the management of his car which he ought, in the exercise of reasonable care, to have done?

This and many other courts have held that the mere skidding of an automobile without more does not prove negligence. Oakes v. Gregory, 133 Neb. 407, 275 N. W. 607; Davis v. Landis Outboard Motor Co., 179 Neb. 391, 138 N. W. 2d 474; Fincham v. Mueller, *supra*; Svercl v. Jamison, 252 Minn. 8, 88 N. W. 2d 839; Oldendorf v. Eide, 260 Minn. 458, 110 N. W. 2d 310. This appears to be the majority rule. 58 A. L. R. 266 et seq.; 113 A. L. R. 1014.

Fincham v. Mueller, *supra*, was an intersection collision in which the plaintiff had to rely upon proof by circumstantial evidence because of an absence or disability of witnesses (the dead man statute). One of the circumstances was that the plaintiff's car had skidded 17 to 18 feet before the impact. One of the allegations of contributory negligence was failure to keep the car under proper control. The court held there was no evidence to support the allegation. In Oakes v. Gregory, *supra*, the plaintiff was a guest passenger and, of course, gross negligence had to be proved. The only evidence was that the car was traveling on a snowy highway at about 20 to 25 miles per hour and, without explanation, left the highway and traveled about 12 feet, striking a tree and causing the plaintiff's injuries. The court said: "Neither does the record disclose any act done by the driver of the car that even indicates that it was the result of any fault of hers. There is *no evidence of any negligence on the part of the driver* of the car, and necessarily no evidence of gross negligence as required by the guest statute." (Emphasis supplied.) In Davis v. Landis Outboard Motor Co.,

*supra*, which was also a guest case, the court said: " 'The fact that the car of deceased got out of his control *does not establish negligence* and much less gross negligence nor does it prove the proximate cause of the accident.' "

Skidding, together with evidence of some other facts and circumstances tending to show a failure to exercise reasonable care, may be sufficient to permit an inference of negligent loss of control. Thomas v. Haspel, 126 Neb. 255, 253 N. W. 73. Skidding is, of course, not irrelevant on the issue of negligence and may, along with other factors including its length, even require a finding of negligence under the range of vision rule. Guynan v. Olson, 178 Neb. 335, 133 N. W. 2d 571.

Some jurisdictions have taken the view that skidding may, in and of itself, be sufficient to permit a jury to reach a conclusion of negligent loss of control. See Jones v. Carr, 382 S. W. 2d 853 (Ky., 1964). However, the recital of the facts in that case indicates there was evidence of more than just the fact of a skid. There was evidence the party had mismanaged the car by improper or untimely application of brakes or shifting of gears and that caused the car to skid and a loss of control. Other courts have said that a skid, in the absence of an explanation by the party, is evidence of negligence and that the jury should be so instructed. Sprenger v. Braker, 71 Ohio App. 349, 49 N. E. 2d 958.

In the case now before us, there is no evidence of excessive speed. Black was traveling at the same speed or less than Porter and considerably less than the first car which passed safely. The damage to Black's car by contact with the guardrail as shown in the photographs can be described as slight. The guardrail was apparently undamaged. None of these things indicate excessive speed and nothing whatever about the reason for the skid. A jury could arrive at a conclusion of negligent loss of con-

trol only by engaging in conjecture. There must be evidence of some fact or circumstance from which an inference can be drawn that the skidding could have been prevented by the exercise of ordinary care. Oldendorf v. Eide, 260 Minn. 458, 110 N. W. 2d 310.

AFFIRMED.