759 N.W.2d 690 (2009)
276 Neb. 1023
Kent L. JARDINE, appellant,
v.
William F. McVEY, Sr., et al., appellees.
No. S-07-1068.
Supreme Court of Nebraska.
January 9, 2009.
*692 Edward D. Hotz, Patrick M. Flood, and Michael R. Peterson, of Hotz, Weaver, Flood, Breitkreutz & Grant, Omaha, for appellant.
Bryan S. Hatch and Victor C. Padios, of Stinson, Morrison & Hecker, L.L.P., Omaha, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
Kent L. Jardine sued his former father-in-law, John N. McVey, and the board of directors of John's family corporations. Kent's claims for breach of fiduciary duty and fraudulent misrepresentation arose out of his divorce from Julie A. Jardine. During their marriage, Julie acquired stock in three corporations owned by her family. Under the property settlement agreement, John, on Julie's behalf, paid Kent $365,426 for any interest he claimed he had in the stock. About 8 months after the divorce, two of the three family corporations were sold at prices greater than what Kent received for his claimed interest in the shares.
Kent sued the directors of the three corporations, alleging two causes of action. Kent alleged that the directors breached their fiduciary duty. Kent contends that he was a shareholder and that the directors had a duty to inform him of the potential sale of the corporations for a greater value when they knew that he was going to receive a lower value for his stock. Kent's second claim for false misrepresentation is against John, Julie's father. Kent claims that John misrepresented to him that the corporations were not for sale, which induced Kent to sign the property settlement.
The district court granted John and the directors' motion for summary judgment. The court determined that Kent failed to establish he was a shareholder and that he was judicially estopped from seeking any further compensation for Julie's stock.
Regarding the breach of fiduciary duty claim, we affirm, because Kent was never a shareholder. Thus, the directors owed him no duty. The false misrepresentation claim fails because he was judicially estopped from claiming a position inconsistent with statements he made during the divorce proceeding. We affirm.

BACKGROUND
We glean the following facts from exhibits received at the summary judgment hearing.

THE DIVORCE AND PROPERTY SETTLEMENT AGREEMENT
In 1980, Kent married Julie. Before the marriage, Kent worked for Continental *693 Fire Sprinkler Company, one of the three corporations owned and operated by Julie's family.
During their marriage, John gave stock to Julie in all three corporations. The record shows that Kent never voted the shares of stock, never participated in any elections, and never served as proxy with the corporations and that all dividend checks were payable only to Julie. Both John, a founder of the corporations, and Kerry N. McVey, Julie's brother and the current president of two of the corporations, testified that Julie was the sole shareholder. The buy-sell agreements for the corporations showed that Julie was a shareholder.
In 2003, Kent filed for divorce. In the property settlement agreement, Kent received payment for a one-half interest he claimed in stock held by Julie in the corporations owned by Julie's family: Continental Fire Sprinkler Company, Continental Alarm & Detection, and Grif-Fab Corporation. Acting on Julie's behalf, John negotiated the settlement agreement with Kent. The main contention between the parties was the stock value. And to evaluate his alleged one-half interest in the stock, Kent retained a certified public accountant who examined the corporations' business records.
Kent also had discussions with Kerry regarding the stock. In the summer of 2004, Kerry proposed a division of the marital assets. In October, John used this proposal and stated to Kent that the values assigned to the stock were fair and reasonable. He stated that he believed Kent should receive around $850,000 when the stock, cabin, boats, jet skis, cars, and all other assets were taken into account.
On November 19, 2004, 4 days before the court entered the divorce decree, John met with Kent and they discussed the terms of the property settlement. At one point, after the conversation with the attorneys had concluded, Kent asked John if Continental Fire Sprinkler Company was for sale and John responded that it was not. Kent then signed the settlement agreement, which provided that he would receive $365,426 for his claimed one-half interest in the stock. In total, Kent received $540,000 in cash, including the stock payment, plus other property valued at $350,000. John paid the $540,000 with his personal check. In exchange, Julie executed a promissory note to her father, John.
During the divorce negotiations, Kent had requested that any settlement agreement contain a "look-back" provision. This provision would have allowed Kent to receive more money for the shares if any of the corporations were sold within a set time after the signing of the property settlement agreement. Julie's attorneys rejected the request, and the provision was not included in the property settlement agreement.
In the agreement, Kent acknowledged and agreed that (1) he did not rely upon any representations whatsoever, whether by Julie or any other person, concerning the stock or the present or future value or prospects or potential income with respect to said stock; (2) he waived and relinquished any further inquiry regarding the stock; (3) he directed his counsel not to pursue any further inquiry regarding the stock; and (4) he argued the allocation of stock to Julie and the payment of $365,426 was "final, absolute and not subject to adjustment, question or challenge for any reason, whether known or unknown and whether now existing."

DISTRICT COURT APPROVES PROPERTY SETTLEMENT AGREEMENT
The district court held a hearing to establish that the settlement agreement was *694 fair, just, and not unconscionable. In response to questioning from his attorney, Kent testified that he (1) believed that the agreement was fair, reasonable, and not unconscionable; (2) agreed that any changes to the stock's value or changes in the corporations' structures, such as a sale, could not be considered in determining whether he received fair value for the stock; and (3) acknowledged that the agreement was final, absolute, and not subject to adjustment, question, or challenge for any reason, whether known or unknown and whether now existing or arising in the future. On November 23, 2004, the district court approved the property settlement agreement and entered the divorce decree.

KENT DISCOVERS THAT THE CORPORATIONS WERE SOLD
In July 2005, Kent discovered that two of the three corporations were sold. Kent claims that the directors were aware of the divorce proceedings and knew the price that he was to receive in the property settlement agreement was substantially less than the value per share in any potential sale. Thus, Kent alleges that the directors had a duty to inform him of the negotiations to sell the corporations and that they breached that duty. Kent also alleges that John misrepresented to him in the fall of 2004 that there were no ongoing negotiations to potentially sell the corporations.
Kerry, who was the president of the corporations at the time, stated that during November 2004, the corporations received two offers. In July 2005, the corporations were sold to a new bidder.

STANDARD OF REVIEW
Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, and we give that party the benefit of all reasonable inferences deducible from the evidence.[2]

ASSIGNMENTS OF ERROR
Kent assigns, restated, that the district court erred in finding that (1) he failed to establish his status as a shareholder and (2) the doctrine of judicial estoppel precluded his claim against John.

ANALYSIS
Kent brought two claims: a breach of fiduciary duty against the board of directors, and a claim against John for fraudulent misrepresentation. The court granted summary judgment on both claims. First, it concluded that Kent was not a shareholder and that the directors therefore owed him no fiduciary duties. Second, it concluded that because of Kent's representations in the divorce proceedings, he was judicially estopped from claiming John made misrepresentations about a potential sale of the corporations.

BREACH OF FIDUCIARY DUTY
An officer or director of a corporation occupies a fiduciary relation toward the corporation and its stockholders.[3] An *695 officer or director must comply with the applicable fiduciary duties in his or her dealings with the corporation and its shareholders.[4] Because a director's fiduciary duties extend only to shareholders and the corporation,[5] Kent's claim hinges on whether he was a shareholder when he signed the property settlement agreement.
In support of their motion for summary judgment, the directors presented evidence that Kent's name was not on the stock certificates; he never signed any stock purchase agreement or stock transfer statement acknowledging he was a shareholder in the corporations; he never signed any buy-sell agreement; he never received or endorsed any dividend checks; he never served as an officer; he never attended any annual meetings; and he never voted any shares, participated in any elections, or served as a proxy for the corporations.
In opposition to the motion for summary judgment, Kent offered the following evidence: (1) He received payment for the stock in the divorce proceeding; (2) Julie obtained the stock during their marriage; (3) during the divorce negotiations with John and Kerry, they "acknowledged" Kent's one-half ownership in the stock; (4) Kerry's statement that if Kent had not worked for the corporations, Julie may not have received the stock when she did; and (5) when the corporations were sold, all shareholders were either employees or former employees of the corporations except Julie. Kent argues that this evidence supports an inference that he had to be a shareholder for Julie to be considered a shareholder.
A shareholder is a "person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation."[6] The directors presented undisputed evidence that Kent's name was not on the stock certificates. But Kent contends that issuance of a stock certificate in his name is not essential for him to be a shareholder. Yet, absent a stock certificate, "some sort of subscription or contract, express or implied, is required, whereby the person obtains the right to (1) hold stock or, upon some condition, demand stock; and (2) exercise the rights of a stockholder."[7]
We have discussed facts indicating shareholder status. In Evans v. Engelhardt,[8] we stated:
During the operation of the corporation, [Paul] Evans was recognized by [the two other remaining corporate shareholders] as an active shareholder and participant in the corporation until June 1989. Distributions from the corporation were based on the percentage of stock ownership. The corporation's income tax returns for 1986 through 1990 list Evans as a shareholder, and Evans' shareholder distributions were reported on a schedule K-1. [The two other shareholders] notified Evans of shareholders' and directors' meetings, which notice evidenced their acknowledgment of Evans as a shareholder of the corporation.
*696 In contrast, Kent has failed to show that the corporations recognized him as a shareholder or that he had any shareholder rights.
Finally, Kent argues that he has standing as a shareholder because of his equitable interest in the stock Julie acquired during the marriage.
Kent relies on cases involving divorce proceedings in which courts recognized a spouse's interest in corporate stock, even if that spouse was not the record holder of the stock.[9] The New Hampshire Supreme Court held in Bursey v. Town of Hudson[10] that a husband's former wife had standing to challenge a tax lien on property owned by a corporation of which the husband, but not the wife, was a shareholder. Although the wife lacked title to the property, the court determined that because the corporation was marital property and a final divorce decree had not been entered, the wife could still have been awarded stock in the divorce decree. Therefore, the court concluded that the wife had a sufficient equitable interest in the property to challenge the tax lien.
Relying on Bursey, Kent contends he should be given shareholder status based upon an alleged equitable interest in the stock when he filed for divorce. He argues that because the alleged breach of fiduciary duties occurred after he filed for divorce and before the entry of the decree, he has shareholder status. Kent's contention fails for several reasons.
First, Bursey is distinguishable. Julie's stock was gifted to her. It was not marital property. Second, to the extent that Kent had any basis for claiming the stock as marital property, he agreed to accept a cash settlement for any claim in the stock.
Most important, whether the directors had a duty to inform Kent of any possible purchase negotiations is different from the issue raised in Bursey. The New Hampshire Supreme Court did not hold that a spouse's marital interest in stock created shareholder status. Nor did it create a duty for a director to inform a non-record-holding spouse of a director's planned action. Here, the directors presented undisputed evidence that the corporations intended and considered Julie as the shareholder.
In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[11] Giving Kent the benefit of all reasonable inferences deducible from the evidence, we conclude no genuine issue of material fact exists whether he was a shareholder. The district court did not err in granting summary judgment on the breach of fiduciary duty claim.

FRAUDULENT MISREPRESENTATION
Kent alleged that John represented to him that there were no ongoing negotiations to potentially sell the corporations. Kent alleged that the representations were false and that John knew them to be false when he made them. He concludes that he suffered damages, because the corporations were later sold for substantially more than he received. The district court granted John summary judgment. It determined that Kent's false misrepresentation claim was barred by judicial estoppel.
*697 Judicial estoppel may bar inconsistent claims against different parties.[12] And, we have previously set out the contours of judicial estoppel:
The doctrine of judicial estoppel holds that one who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.... The doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.... It has been said that unlike equitable estoppel, judicial estoppel may be applied even if detrimental reliance or privity does not exist.... However, the doctrine is to be applied with caution so as to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.... Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists.[13]
Whether judicial estoppel is applicable turns on whether the court has accepted inconsistent positions from the plaintiff. In adopting judicial estoppel in Melcher v. Bank of Madison,[14] we relied on a Sixth Circuit case.[15] There, the court determined that the requirement that the position be successfully asserted means that the party must have been successful in getting the first court to accept the position. And absent such acceptance, the doctrine of judicial estoppel does not apply.[16] The court further stated that "judicial acceptance" requires not that a party prevail on the merits, but "only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition."[17]
We have similarly recognized that for judicial estoppel to apply, the court must have accepted a previous inconsistent position.[18] Therefore, whether judicial estoppel applies depends upon whether Kent "successfully and unequivocally" asserted a position in the divorce proceeding that is inconsistent with his position in this lawsuit. Kent claims that John misrepresented at their November 19, 2004, meeting that the corporations were not for sale. Yet, the property settlement agreement states that Kent did not rely "upon any representations whatsoever, whether by Wife or any other person, concerning such stock or the present or future value or prospects or potential income with respect to said stock."
And remember, he specifically agreed to waive and relinquish any further inquiry into the stock, and he directed his attorney not to pursue any further inquiry into the stock. He also agreed that the allocation of the stock and the payment for the stock is "final, absolute and not subject to adjustment, question or challenge for any reason, whether known or unknown and whether now existing or arising in the *698 future." Additionally, he testified at the divorce proceedings that cash payment to him for the stock was fair and reasonable. He also agreed that any changes regarding the stock's value or changes to the corporations' structure, mergers, sales, or the like would not affect the value of the stock in which he claimed an interest. In sum, Kent represented in the divorce proceeding that he did not rely upon anyone in entering into the property settlement agreement regarding the stock. His representations provided a basis for the court's acceptance of the property settlement agreement. Backpedaling, he now argues that he did rely upon John's statements that the corporations were not for sale when he agreed to the property settlement.
Despite any statements made to Kent, the agreement was clearly intended to preclude further claims related to the corporations' sale. Kent cannot show that he did not understand the consequences of signing the property settlement agreement. These inconsistent positions support the district court's determination that his claim is judicially estopped.
Giving Kent the benefit of all reasonable inferences deducible from the evidence, we conclude no genuine issue of material fact exists whether Kent's claim is judicially estopped. If Kent did not rely upon any representations regarding the stock when he entered the property settlement agreement, this would clearly include his representation that he did not rely upon any statements regarding the potential sale of the stock, or the lack thereof. The language of the property settlement is not limited to foreclosing Kent's reliance solely on any values placed on the stock. It also forecloses his reliance on any representations regarding the stock, including the potential sale of the corporations. Because Kent is adopting inconsistent positions, his claim is judicially estopped. The district court did not err in granting summary judgment.
Affirmed.
NOTES
[1] Thone v. Regional West Med. Ctr., 275 Neb. 238, 745 N.W.2d 898 (2008).
[2] Amanda C. v. Case, 275 Neb. 757, 749 N.W.2d 429 (2008).
[3] See, Trieweiler v. Sears, 268 Neb. 952, 689 N.W.2d 807 (2004); Woodward v. Andersen, 261 Neb. 980, 627 N.W.2d 742 (2001).
[4] Trieweiler, supra note 3.
[5] See, id.; Doyle v. Union Ins. Co., 202 Neb. 599, 277 N.W.2d 36 (1979). See, also, Neb. Rev.Stat. §§ 21-2014, 21-2050, and 21-2055 (Reissue 2007).
[6] § 21-2014(20).
[7] 18A Am.Jur.2d Corporations § 614 at 450 (2004). See Renner v. Wurdeman, 231 Neb. 8, 434 N.W.2d 536 (1989).
[8] Evans v. Engelhardt, 246 Neb. 323, 326, 518 N.W.2d 648, 651 (1994).
[9] See Bursey v. Town of Hudson, 143 N.H. 42, 719 A.2d 577 (1998). See, also, Kaplus v. First Continental Corp., 711 So.2d 108 (Fla. App.1998); LaHue v. Keystone Inv. Co., 6 Wash.App. 765, 496 P.2d 343 (1972).
[10] Bursey, supra note 9.
[11] See Amanda C., supra note 2.
[12] See Melcher v. Bank of Madison, 248 Neb. 793, 539 N.W.2d 837 (1995).
[13] Id. at 798, 539 N.W.2d at 842 (citations omitted).
[14] Melcher, supra note 12.
[15] Edwards v. Aetna Life Ins. Co., 690 F.2d 595 (6th Cir.1982).
[16] Id.
[17] Id. at 599, n. 5.
[18] In re Loyal W. Sheen Family Trust, 263 Neb. 477, 640 N.W.2d 653 (2002).