770 N.W.2d 619 (2009)
278 Neb. 289
Brent E. RASMUSSEN and Kim Rasmussen, appellants and cross-appellees,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., appellees, and
Krista Lisbon, formerly known as Krista Van Wyhe, appellee and cross-appellant.
No. S-08-747.
Supreme Court of Nebraska.
August 7, 2009.
*622 Thomas A. Grennan and Bryan J. Roberts, of Gross & Welch, P.C., L.L.O., Omaha, for appellants.
Donald R. Witt and Andrea D. Snowden, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellee Krista Lisbon.
Russell A. Westerhold, of Fraser Stryker, P.C., L.L.O., Omaha, for appellee State Farm Mutual Automobile Insurance Company.
HEAVICAN, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
Krista Lisbon, formerly known as Krista Van Wyhe, was driving eastbound on Interstate 80 between Lincoln and Omaha, Nebraska, when her automobile slid off the right side of the Interstate into a ditch. Brent E. Rasmussen, who was also driving eastbound, stopped his vehicle to assist. When attempts to rock Lisbon's vehicle to get it out of the ditch were unsuccessful, *623 Rasmussen decided to retrieve a towrope from his vehicle. As Rasmussen stepped away from Lisbon's vehicle, another car slid off the highway and struck Rasmussen, Lisbon's vehicle, and another motorist who had stopped to help. Rasmussen was severely injured. The district court granted summary judgment against Rasmussen and his wife, and they appeal. Lisbon cross-appeals.

SCOPE OF REVIEW
Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Jardine v. McVey, 276 Neb. 1023, 759 N.W.2d 690 (2009). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and the court gives that party the benefit of all reasonable inferences deducible from the evidence. Id.
The meaning of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. Steffensmeier v. Le Mars Mut. Ins. Co., 276 Neb. 86, 752 N.W.2d 155 (2008).

FACTS
While driving eastbound on Interstate 80 between Lincoln and Omaha on February 9, 2002, Lisbon's vehicle slid into the left lane and then veered right and slid off the Interstate into the ditch. Rasmussen saw Lisbon's vehicle slide off the Interstate, and he stopped his vehicle on the right shoulder of the road to offer assistance. He proceeded on foot to Lisbon's vehicle to determine the extent of her injuries, if any. He tried to help Lisbon get the vehicle back onto the road by rocking it back and forth. The attempt was unsuccessful, and Rasmussen turned to go to his vehicle to obtain a towrope that could be used to pull Lisbon's vehicle. Another motorist had stopped his vehicle and was walking down into the ditch to help. A car driven by Marilyn Andersen slid off the Interstate and struck Rasmussen, the other motorist attempting to help, and Lisbon's vehicle. Rasmussen sustained severe injuries that required amputation of his left foot.
Lisbon's vehicle was owned by her stepfather, Gary Bosch, who lived in Michigan. The car was insured by State Farm Mutual Automobile Insurance Company (State Farm). Andersen's vehicle was uninsured. Rasmussen and his wife, Kim Rasmussen, made a claim for uninsured motorist benefits under their insurance policy (Rasmussen policy), which was also issued by State Farm. The Rasmussens were paid $100,000 pursuant to uninsured motorist benefits provided by their policy. They also made a claim against State Farm for uninsured motorist benefits under the policy issued on the Lisbon vehicle (Bosch policy). State Farm denied the claim.
The Rasmussens filed suit in the Douglas County District Court against Lisbon and State Farm. The Rasmussens claimed uninsured motorist benefits under the Bosch policy. Rasmussen alleged that his actions as related to the vehicle driven by Lisbon constituted the operation, maintenance, or use of the Bosch vehicle and that therefore, Rasmussen was an insured under the Bosch policy. Rasmussen claimed that State Farm acted in bad faith by denying the claim.
Rasmussen also claimed that Lisbon placed him in peril by operating her vehicle *624 in a negligent manner. He claimed that in attempting to rescue Lisbon, he sustained severe and permanent injuries. Rasmussen's wife claimed loss of consortium.
State Farm and Lisbon generally denied the Rasmussens' allegations. State Farm denied coverage under the Bosch policy and alleged that the payment of $100,000 pursuant to the uninsured motorist benefits portion of the Rasmussen policy barred recovery for additional benefits under any policy issued by State Farm.
Lisbon denied liability and alleged she owed no duty to Rasmussen that would create a cause of action for negligence. She further alleged that the "rescue doctrine" did not create a cause of action in favor of Rasmussen and was not applicable to a two-party action where the rescuer sues the person rescued based upon the alleged negligence of the person rescued.
It was not disputed that at the time of the accident, Lisbon's vehicle was insured through State Farm under a policy owned by her parents. The vehicle was licensed and registered in the state of Michigan and was used by Lisbon while attending school at the University of Nebraska-Lincoln. Rasmussen's vehicle was insured by State Farm, and State Farm had paid $100,000 pursuant to the uninsured motorist benefits under the Rasmussen policy. The district court for Douglas County sustained State Farm's motion for summary judgment and dismissed the Rasmussens' complaint with prejudice. Applying Michigan law, the district court concluded that Rasmussen was not an insured under the Bosch policy and that neither Rasmussen nor his wife was entitled to benefits under the provisions of that policy. The district court also found that State Farm did not act in bad faith in refusing to make payments to the Rasmussens based on the Bosch policy.
As to Lisbon's motion for summary judgment, the district court found genuine issues of fact as to whether Lisbon was negligent, whether Rasmussen had a reasonable belief that Lisbon was in peril, and whether the alleged rescue was reasonable and completed. However, the court sustained Lisbon's summary judgment motion on the grounds that Lisbon did not owe a legal duty to the Rasmussens and that Nebraska did not recognize an independent cause of action based on the rescue doctrine where the rescuer sues the person rescued. It denied the Rasmussens' motion to reconsider. The Rasmussens timely appealed, and Lisbon cross-appealed.

ASSIGNMENTS OF ERROR
The Rasmussens claim, summarized and restated, that the district court erred in sustaining Lisbon's motion for summary judgment, in concluding that a cause of action under the rescue doctrine did not exist under these circumstances, and in concluding that Lisbon owed Rasmussen no duty. The Rasmussens also claim the court erred in denying their motion for summary judgment against State Farm, in granting State Farm's motion for summary judgment, and in applying Michigan law in interpreting the Bosch policy to find that they were not insureds and were not entitled to benefits under the policy.
Lisbon cross-appeals, arguing that the district court erred in finding that there were genuine issues of fact as to whether Lisbon was negligent and proximately caused the accident and whether Rasmussen had a reasonable belief that Lisbon was in imminent peril.

ANALYSIS

RESCUE DOCTRINE
We first address the summary judgment in favor of Lisbon in which the *625 district court determined that Lisbon did not owe a duty to Rasmussen and that Nebraska does not recognize an independent cause of action based upon the rescue doctrine. "The rescue doctrine contemplates a voluntary act by one who, in an emergency and prompted by spontaneous human motives to save human life, attempts a rescue which he had no duty to attempt by virtue of a legal obligation or duty fastened on him by his employment." Buchanan v. Prickett & Son, Inc., 203 Neb. 684, 688, 279 N.W.2d 855, 858 (1979).
This court has considered the rescue doctrine in several cases. Application of the rescue doctrine in Nebraska has generally involved the issue of the contributory negligence of the plaintiff. In Beatty v. Davis, 224 Neb. 663, 400 N.W.2d 850 (1987), the plaintiff attempted to jump into an unoccupied moving vehicle to stop it, and she was injured when she fell out of the car as it traveled in a circle. We held that it was not contributory negligence for the plaintiff to expose herself to danger in an effort to save herself or others from injury to their person or property, unless the effort itself was an unreasonable one or the plaintiff acted unreasonably in the course of the rescue.
In Moravec v. Moravec, 216 Neb. 412, 343 N.W.2d 762 (1984), the plaintiff was burned when he attempted to warn the owners of a house about a fire in the kitchen. The trial court had concluded that the plaintiff, who undertook to fight a fire on the premises of another, assumed the risk. We reversed the judgment and remanded the cause, stating:
Under the rescue doctrine it is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the property of a third person from harm. The extent of the risk which the volunteer is justified in assuming under the circumstances increases in proportion to the imminence of the danger and the value to be realized from meeting the danger and attempting to remove or eliminate the hazard; i.e., the less the danger to the third party, the less the risk the volunteer is justified in taking.
Id. at 415, 343 N.W.2d at 764.
In Struempler v. Estate of Kloepping, 261 Neb. 832, 626 N.W.2d 564 (2001), the plaintiff injured her back while assisting an elderly, invalid neighbor into his wheelchair. The plaintiff sued the neighbor's estate, alleging that the neighbor negligently placed himself in a position of immediate peril by remaining in his residence without qualified medical personnel to assist him when he fell from his wheelchair. The plaintiff maintained she was a rescuer because the neighbor placed himself in a position of peril which invited rescue. The trial court granted summary judgment to the estate, and we affirmed. We declined the plaintiff's invitation to apply the rescue doctrine to the facts of that case.
Prior cases applying the rescue doctrine have generally involved three partiesthe rescuer, the person rescued, and a third-party tort-feasor. The person attempting a rescue was trying to recover damages from a third person whose negligence allegedly put the victim in peril and created the need for the rescue. In the case at bar, the question is whether Lisbon, the person rescued, may be liable to Rasmussen, the rescuer.
We conclude that the district court should have applied the rescue doctrine to the facts of this case. Here, we find no reason to make a distinction between the negligence of the person being rescued which is a proximate cause of injury to the rescuer and the negligence of a third party which placed the person to be rescued in *626 peril and caused injury to another who attempted the rescue.
Rasmussen alleged that Lisbon's negligent operation of her motor vehicle placed her in peril and invited the rescue by Rasmussen. It is reasonably foreseeable that one who witnesses a motor vehicle accident will stop and attempt to render assistance.
Other courts have applied the doctrine based upon the premise that heroic people will do heroic deeds. See Clinkscales v. Nelson Securities, Inc., 697 N.W.2d 836 (Iowa 2005). The Iowa court in Clinkscales noted that it had consistently and liberally applied the rescue doctrine, which was forged at common law, for more than 100 years. The court quoted Justice Benjamin Cardozo:
"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer.... The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had."
697 N.W.2d at 841, quoting Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437 (1921). The rescue doctrine recognizes that those who negligently imperil life or property may be liable not only to their victims, but also to the rescuers. Clinkscales, supra.
In Clinkscales, the plaintiff was burned when he attempted to turn off the gas line to a grill in a bar that had started on fire. The trial court and the Iowa Court of Appeals declined to apply the rescue doctrine, concluding that the plaintiff had suffered a "`self-inflicted wound.'" Id. at 840. The Iowa Supreme Court reversed, finding that so long as the rescuer's response was normal, the negligent actor would not escape liability for the rescuer's injuries. The court stated that in most cases, what constituted normal or natural conduct depended on the circumstances and was a question for the jury.
The Missouri Supreme Court also considered whether a person injured during a reasonable attempt to rescue another may recover from the person rescued when such person was guilty of negligently imperiling himself. Lowrey v. Horvath, 689 S.W.2d 625 (Mo.1985). The court concluded that there was no logical basis to distinguish between a situation in which recovery is sought against the defendant whose negligence put a third party at peril and the situation in which recovery is sought against a defendant who put himself at peril negligently. The court stated:
A person with reasonable foresight who negligently imperils another or who negligently imperils himself will normally contemplate the probability of an attempted rescue, in the course of which the rescuer may sustain injury. Under the rescue doctrine, "the right of action depends ... upon the wrongfulness of the defendant's conduct in its tendency... to cause the rescuer to take the risk involved in the attempted rescue...."
Id. at 628, quoting F. Bohlen, Studies in the Law of Torts (1926).
In Hoefer v. Roche Biomedical Laboratories, 826 S.W.2d 49 (Mo.App.1992), a woman driving on an icy highway lost control, crossed the highway, and embedded her car in a ditch. A man traveling in the same direction saw the car in the ditch and crossed the road to help her. While assisting the woman, the man was struck by *627 another vehicle that slid off the highway. The court held that the man could bring a cause of action under the rescue doctrine against the woman whose loss of control of her vehicle had placed her in a position of peril.
In French v. Uribe, Inc., 132 Wash.App. 1, 130 P.3d 370 (2006), the court applied the rescue doctrine to allow recovery of damages from the rescued person if the rescuer is injured during the rescue of a person who negligently caused the dangerous situation that invited the rescue. The court stated that the rescue doctrine serves two purposes:
First, the rescue doctrine notifies tortfeasors that it is foreseeable a rescuer will come to the aid of the person imperiled by a tortfeasor's conduct, and that the tortfeasor owes the rescuer a duty similar to the duty owed to the person the tortfeasor imperils. Second, the doctrine negates the presumption that the rescuer assumed the risk of injury by undertaking the rescue, as long as the rescuer does not act rashly or recklessly.
Id. at 14, 130 P.3d at 375.
We conclude that the facts in the case at bar lend themselves to application of the rescue doctrine. The rescuer who sustains injuries in reasonably undertaking a rescue may recover from the rescued person if such person's negligence created a situation which necessitated the rescue. See Annot., 4 A.L.R.3d 558 (1965).
The question of the duty owed by the rescued person is subsumed in our conclusion that the rescue doctrine applies to the case at bar. The rescue doctrine is "`shorthand for a public policy' that imposes a duty of care owed to rescuers." Baldonado v. El Paso Natural Gas Company, 143 N.M. 288, 292, 176 P.3d 277, 281 (2007), quoting Govich v. North American Systems, Inc., 112 N.M. 226, 814 P.2d 94 (1991).
Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. Fuhrman v. State, 265 Neb. 176, 655 N.W.2d 866 (2003). A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. Erickson v. U-Haul Internal., 274 Neb. 236, 738 N.W.2d 453 (2007). The rescue doctrine defines a particular standard of conduct and recognizes a duty of the rescued person whose conduct has placed the rescuer in peril.
It has long been held that a person has a duty to exercise ordinary care for his own safety. See, e.g., Fullenwider v. Brawner, 224 Ky. 274, 6 S.W.2d 264 (1928); Varela v. Reid, 23 Ariz. 414, 204 P. 1017 (1922). The driver of an automobile owes a duty of reasonable care in the operation of the vehicle. See Adams v. Welliver, 155 Neb. 331, 51 N.W.2d 739 (1952). Lisbon was required to exercise due care in the operation of her motor vehicle upon a public highway. It was reasonably foreseeable that a passing motorist, upon seeing the accident, would stop to render aid. Lisbon had a duty of reasonable care to avoid a risk of harm to herself that would invite rescue by others.
We therefore conclude that the district court erred in finding that Nebraska did not recognize an independent cause of action based on the rescue doctrine and in granting summary judgment in favor of Lisbon. There remain material issues of fact regarding Lisbon's alleged negligence and the damages resulting from her alleged negligence. For these reasons, we reverse the summary judgment granted in favor of Lisbon and remand the cause for *628 further proceedings consistent with this opinion.
Having disposed of the matters involving Lisbon, we now proceed to the issues involving State Farm and the summary judgment entered in its favor against Rasmussen.

STATE FARM'S DENIAL OF RASMUSSENS' CLAIMS
The Rasmussens assert that the district court erred in applying Michigan law and in concluding that they were not insureds and, therefore, not entitled to uninsured motorist benefits under the Bosch policy. They claim that under Nebraska law, they are insureds, and that the summary judgment should be reversed. They claim that neither Rasmussen nor his wife has collected the maximum amount payable under the Bosch policy.
The meaning of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. Steffensmeier v. Le Mars Mut. Ins. Co., 276 Neb. 86, 752 N.W.2d 155 (2008). We conclude that under either Nebraska or Michigan law, the Rasmussens are not entitled to additional payments based on coverage pursuant to the uninsured motorist provisions of either the Bosch or the Rasmussen policy.
The Bosch policy provides:
If uninsured motor vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, persons covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.
The Rasmussen policy provides:
If the insured sustains bodily injury as a pedestrian and other uninsured motor vehicle coverage applies:
a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and
b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident.
State Farm paid the Rasmussens $100,000 pursuant to the uninsured motorist coverage of the Rasmussen policy. Both the Bosch policy and the Rasmussen policy limit the uninsured motor vehicle benefits per person to $100,000.
Nebraska law provides:
Regardless of the number of vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, the limits of liability for uninsured or underinsured motorist coverage for two or more motor vehicles insured under the same policy or separate policies shall not be added together, combined, or stacked to determine the limit of insurance coverage available to an injured person for any one accident except as provided in section 44-6411.
Neb.Rev.Stat. § 44-6410 (Reissue 2004).
"In the event an insured is entitled to uninsured or underinsured motorist coverage under more than one policy of motor vehicle liability insurance, the maximum amount an insured may recover shall not exceed the highest limit of any one such *629 policy." Neb.Rev.Stat. § 44-6411(1) (Reissue 2004).
Michigan courts have held that "antistacking provisions" are valid and not in contravention of public policy when they are clear and unambiguous. State Farm Ins. v. Tiedman, 181 Mich.App. 619, 624, 450 N.W.2d 13, 15 (1989). See, also, DeMaria v. Auto Club (On Rem), 165 Mich. App. 251, 418 N.W.2d 398 (1987). Thus, it is not necessary to determine which state's laws are applied here, because under either Michigan or Nebraska law, Rasmussen has already recovered the maximum amount to which he is entitled.
Although not assigned as a separate error, the Rasmussens' argument also suggests that neither Rasmussen nor his wife has received the maximum amount recoverable under any one policy because they were paid $100,000 together. The payment from State Farm was made payable to both of them, and the funds were deposited in a joint account. Rasmussen claims that he has received only $50,000, that his wife's loss of consortium claim was not fully compensated, and that each is due another $50,000.
Loss of consortium claims are derivative. See Schendt v. Dewey, 246 Neb. 573, 520 N.W.2d 541 (1994). The loss of consortium claim is based upon the injuries sustained by Rasmussen in the accident. The coverage to Rasmussen under the Rasmussen policy is one-person coverage of $100,000 per person. There are not two separate injuries. Rasmussen's wife's loss is compensable as a part of Rasmussen's $100,000-per-person coverage and is not a separate bodily injury that would provide another $100,000 of coverage under the policy.
In Wilson v. Capital Fire Ins. Co., 136 Neb. 435, 286 N.W. 331 (1939), a husband and wife were both injured. The insurance policy in question had a $5,000/$10,000 limit for loss from an accident resulting in bodily injuries to one or more persons. The wife, in one suit, obtained a judgment of $5,000, which the defendant paid. The husband, in a second action, sued for personal injuries and loss of consortium, which resulted in a judgment of $4,000$275 for injuries and property damage and $3,725 for loss of services and companionship. The issue was whether the insurance company was liable for loss of consortium. The court held that the loss of consortium represented injuries sustained by one person (the wife) and that the insurance company, having paid the limit for injuries to the wife, was not liable under the terms of the policy for damages for loss of consortium. The policy limit of $5,000 covered damages, whether direct or consequential.
Here, State Farm has paid the limit for injuries to one person. It is not liable for any amount above the $100,000 limit. The Bosch policy provided: "`Bodily injury to one person' includes all injury and damages to others resulting from this bodily injury." The Rasmussen policy has an identical provision. Any loss of consortium damages sustained by one spouse would fall into the category of damages resulting from bodily injury to the other spouse. Under the policy, such damages are combined with Rasmussen's damages and are subject to one limit of liability. State Farm has no additional liability to the Rasmussens under either policy, and the district court was correct in granting summary judgment to State Farm.

BAD FAITH
The Rasmussens also assert that the district court erred in finding that State Farm did not act in bad faith in refusing to pay benefits under the Bosch policy. The assigned error has no merit *630 for two reasons. First, there has been no bad faith shown. Second, the Rasmussens have not argued this error on appeal. For an appellate court to consider an alleged error, the error must be both specifically assigned and specifically argued in the brief of the party assigning the error. Parker v. State ex rel. Bruning, 276 Neb. 359, 753 N.W.2d 843 (2008).

CROSS-APPEAL
Consistent with her argument that she owed no duty of care to Rasmussen and that there was no actionable negligence as a matter of law, Lisbon asserts the district court was correct in concluding that she did not owe a duty of care to Rasmussen and that the rescue doctrine did not provide an independent cause of action against her under the facts and circumstances presented.
On cross-appeal, she argues that the district court erred in finding there was a genuine issue of material fact regarding whether she was negligent and proximately caused her vehicle to leave the roadway and slide into the ditch. She claims the court erred in finding that there was a genuine issue of fact as to whether Rasmussen had a reasonable belief that she was in imminent peril at the time he was struck by the Andersen vehicle.
Lisbon argues that even if Nebraska recognized an independent cause of action under the rescue doctrine, the Rasmussens' claims fail because they are predicated on the fact that Lisbon was negligent in the operation of her vehicle. She asserts that as a matter of law, she was not negligent.
The burden of proving negligence is on the party alleging it, and merely establishing that an accident happened does not prove negligence. Macfie v. Kaminski, 219 Neb. 524, 364 N.W.2d 31 (1985). In Macfie, the defendant was traveling on Interstate 80 while it was raining or snowing and the temperature was near freezing. He lost control of his car, started sliding sideways along a bridge, and was hit by a second vehicle. His car eventually came to a stop straddling both eastbound lanes of the Interstate. A series of collisions occurred thereafter, including the one involving the plaintiff. The plaintiff contended that the defendant was negligent in operating his motor vehicle at an excessive rate of speed and failing to have his vehicle under proper control. The district court granted the defendant's motion for directed verdict, finding that the plaintiff had failed as a matter of law to present sufficient evidence to warrant submission of the question of negligence to the jury. We affirmed on appeal, finding that the evidence disclosed that the defendant was traveling at 55 m.p.h., that the plaintiff was traveling at 50 m.p.h., and that the rest of the traffic was also traveling at that speed. We said the evidence was clear that both the plaintiff and the defendant, as well as most of the other traffic, were traveling within the speed limit.
Lisbon argues that the record in this case demonstrates a complete lack of proof that she was negligent in the operation of her motor vehicle. She points out that the only evidence regarding the operation of her vehicle immediately before it left the roadway was that she was traveling at 65 m.p.h., the other traffic was going approximately the same speed, no cars were passing her, and she did nothing to affect the movement of her vehicle. Rasmussen admitted that he knew of no action Lisbon took which caused her vehicle to go off the roadway and that the speed of 65 m.p.h. seemed reasonable under the circumstances.
In reviewing a summary judgment, an appellate court views the evidence *631 in the light most favorable to the party against whom the judgment was granted, and the court gives that party the benefit of all reasonable inferences deducible from the evidence. Jardine v. McVey, 276 Neb. 1023, 759 N.W.2d 690 (2009). The mere skidding of an automobile, without more, does not prove negligence. Porter v. Black, 205 Neb. 699, 289 N.W.2d 760 (1980). Skidding, together with evidence of some other facts and circumstances tending to show a failure to exercise reasonable care, may be sufficient to permit an inference of negligent loss of control. Id. Lisbon was traveling at 65 m.p.h. on the Interstate when it was snowing. Her car initially slid to the left side of the roadway and then to the right and into a ditch. Whether Lisbon was driving at a speed that was reasonable and proper under the then-existing conditions is a factual question and should be left to the jury. See Middleton v. Nichols, 178 Neb. 282, 132 N.W.2d 882 (1965).
A motorist is required to maintain reasonable control of the vehicle commensurate with the road conditions then and there existing at the time of the occurrence. See Huntwork v. Voss, 247 Neb. 184, 525 N.W.2d 632 (1995). The speed of an automobile is excessive if it is found to be unreasonable or imprudent under the existing circumstances, even though it may not exceed the applicable statutory limits. Id. Giving all reasonable inferences to the Rasmussens, as we are required to do in a motion for summary judgment, we cannot say as a matter of law that the Rasmussens failed to establish any evidence of negligence on Lisbon's part.
Similarly, we find that the district court did not err in concluding that there was a material issue of fact whether Rasmussen had a reasonable belief that Lisbon was in immediate peril at the time he was struck by the Andersen vehicle. Even if Rasmussen realized that Lisbon was not in immediate peril when he began to return to his vehicle, it was the initial occurrence that caused him to stop and attempt a rescue. He still had to return to his vehicle in the same manner in which he had come. Whether Rasmussen no longer believed that Lisbon was in immediate danger is not material. Obviously, there was an immediate danger. Another vehicle slid off the Interstate and crashed into Lisbon's vehicle, Rasmussen, and the other motorist who had stopped to assist Lisbon.
To conclude as a matter of law that Rasmussen lost the status of a rescuer because he no longer believed that Lisbon was in immediate peril would defeat the purpose of the rescue doctrine. The question is whether Rasmussen had a reasonable belief that Lisbon was in immediate peril at the time he left his vehicle to render her assistance. We therefore conclude that Lisbon's cross-appeal is without merit.

CONCLUSION
The district court erred in granting summary judgment in favor of Lisbon and in concluding that Lisbon owed no duty to Rasmussen and that Nebraska does not recognize an independent cause of action under the rescue doctrine. However, the court was correct in granting summary judgment in favor of State Farm. Lisbon's cross-appeal is without merit.
For the reasons set forth herein, we affirm in part, and in part reverse and remand for further proceedings consistent with this opinion.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.