Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/09/2021 08:09 AM CST

- 442 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

Michael F. Saif and Mary Sue Saif, appellants,
v. Atlantic States Insurance Company,
successor by merger with Le Mars
Insurance Company, appellee.

___ N.W.2d ___

Filed February 2, 2021.    No. A-19-366.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm
a lower court's grant of summary judgment if the pleadings and admit-
ted evidence show that there is no genuine issue as to any material facts
or as to the ultimate inferences that may be drawn from those facts and
that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views
the evidence in the light most favorable to the party against whom the
judgment was granted and gives that party the benefit of all reasonable
inferences deducible from the evidence.

3. **Summary Judgment.** Summary judgment proceedings do not resolve
factual issues, but instead determine whether there is a material issue of
fact in dispute.

4. ____. If a genuine issue of fact exists, summary judgment may not prop-
erly be entered.

5. **Summary Judgment: Proof.** The party moving for summary judgment
has the burden to show that no genuine issue of material fact exists and
must produce sufficient evidence to demonstrate that the moving party
is entitled to judgment as a matter of law.

6. **Summary Judgment: Evidence: Proof.** After the movant for summary
judgment makes a prima facie case by producing enough evidence to
demonstrate that the movant is entitled to judgment if the evidence were
uncontroverted at trial, the burden to produce evidence showing the
existence of a material issue of fact that prevents judgment as a matter
of law shifts to the party opposing the motion.

7. **Summary Judgment.** In the summary judgment context, a fact is mate-
rial only if it would affect the outcome of the case.

- 443 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

8. **Insurance: Breach of Contract.** An insurer cannot assert a breach of a policy's cooperation provision as a policy defense in the absence of showing prejudice or detriment to the insurer.

9. **Summary Judgment: Insurance: Breach of Contract: Proof.** To be entitled to a summary judgment, the insurer must establish, as a matter of law, that there was a breach of a cooperation provision and that said breach prejudiced the insurer.

10. **Insurance: Breach of Contract: Proof.** It is the insurer's burden to prove the breach resulted in prejudice.

11. **Insurance: Breach of Contract.** Normally, the question of whether an insured's breach of a cooperation clause prejudiced an insurer is a question of fact, and will seldom be decided as a matter of law.

12. **Insurance: Contracts.** The purpose of a cooperation provision in a contract is to ensure that an insurer has an opportunity to protect its interests.

13. **Insurance: Notice: Proof: Time.** Prejudice is established by examining whether the insurer received notice in time to meaningfully protect its interests.

14. **Insurance: Breach of Contract: Proof.** Regardless of the nature of the breach, there must be a showing of detriment or prejudice to the insurer.

15. ____: ____: ____. In jurisdictions where a showing of prejudice to the insurer is required, it is usually inevitable that the merits of the main case must be developed to some extent when the defense of noncooperation is raised. That is frequently the only way the triers of fact can intelligently appraise and determine whether actual prejudice did or did not exist.

16. **Claims: Insurance: Breach of Contract.** When an insured seeks coverage for his or her own loss, the issue is whether the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid. If the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist.

17. **Claims: Insurance.** When an insured has provided a significant amount of information that has been requested by an insurer, a fact finder could conclude that to whatever extent additional information was not provided, the failure did not prevent (or should not have prevented) the insurer from making a reasonable estimate of the insured's claim.

18. **Contracts: Waiver: Intent: Proof.** A party may prove the waiver of a contract by (1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive the right.

- 444 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

19. **Insurance: Contracts: Waiver.** An unreasonable delay amounts to denial of coverage and constitutes a waiver of any right to insist on certain policy provisions.
20. **Breach of Contract.** The general rule is that a demand for performance is not necessary unless required by the terms of the contract or its peculiar nature.
21. **Claims: Marriage.** Loss of consortium claims are derivative and are based upon an injured spouse's right to recover for direct injuries.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Reversed and remanded for further proceedings.

Steven M. Lathrop and Joshua J. Yambor, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellants.

Michael L. Moran, of Engles, Ketcham, Olson & Keith, P.C., for appellee.

Riedmann and Bishop, Judges.

Per Curiam.

## INTRODUCTION

Michael F. Saif and Mary Sue Saif appeal from an order of the Lancaster County District Court in which summary judgment was granted in favor of Atlantic States Insurance Company (Atlantic), successor by merger with Le Mars Insurance Company, on Michael's claim for underinsured motorist (UIM) benefits and Mary Sue's claim for UIM benefits on a theory of loss of consortium. The district court found that based on the undisputed material facts, (1) Michael materially breached the cooperation provisions in the policy and his refusal to cooperate prejudiced Atlantic's ability to investigate the claim without the expense and delay of litigation, (2) Atlantic did not waive the cooperation provisions, and (3) Atlantic did not breach the policy by refusing to pay UIM benefits to Mary Sue, and that therefore, Atlantic was entitled to judgment as a matter of law. Because we conclude there were material questions of fact, summary judgment was not

- 445 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

proper in this case. For the reasons that follow, we reverse, and remand for further proceedings.

## BACKGROUND

On October 1, 2014, Michael was cycling on the shoulder of Highway 43 in Lancaster County, Nebraska, when he was struck from behind by a pickup driven by Edward Vasa. At the time, Vasa was acting within the scope of his employment with Vasa Construction, which was insured by EMC Insurance Companies (EMC) up to a liability amount of $1 million. Michael suffered extensive injuries as a result of the collision, incurring medical expenses in excess of $350,000 and the likelihood of ongoing treatment for the rest of his life.

At the time of the accident, the Saifs owned an insurance policy with Atlantic, which included UIM coverage up to $500,000. The policy included provisions outlining the duties an insured has after an accident or loss, including that the insured would cooperate with Atlantic's investigation of the claim, submit to examination under oath at the request of Atlantic, and authorize Atlantic to obtain medical and other relevant records. The policy also required full compliance with its terms prior to bringing any legal action against Atlantic.

On November 6, 2014, counsel for the Saifs wrote Atlantic, advising it of a potential claim for medical payment and UIM benefits. In response, Atlantic opened a UIM claim file and assigned an adjuster for the file, who established an initial reserve. On April 1, 2015, Michael's counsel informed Atlantic that Michael had reached a tentative settlement with EMC, Vasa's insurance provider, for the limits of Vasa's coverage. Along with the April letter was included a signed authorization to disclose health information and a release of employment information, both of which expired after 45 days. Atlantic did not use this initial authorization, nor request an examination under oath of Michael, because a formal demand for payment of UIM benefits under the policy had not been made.

- 446 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

On May 9, Atlantic wrote Michael's counsel, advising that Atlantic would not substitute the policy limits tendered by EMC and authorized Michael to settle with EMC.

On February 16, 2016, Michael's counsel contacted Atlantic, reaffirming his intent to submit a UIM claim at a later date. In September, Atlantic followed up with Michael's counsel regarding whether it should still expect a UIM claim. A month later, Michael's counsel replied that Michael continued to be treated for ongoing medical issues, that he was in the process of gathering additional medical records and reports, and that a demand would be made when those records were received.

On January 31, 2017, counsel for Atlantic again reached out to Michael's counsel, questioning whether Michael intended to make a UIM claim. Michael's counsel responded by email that same day: "I most definitely intend to proceed with a claim. You should have a policy limit demand within the week. We have recently gathered updated medical." The next day, counsel for Atlantic contacted Michael's counsel identifying the documents Atlantic was requesting along with Michael's UIM demand: "We need all medical records, bills and reports relating to this matter, including medical evaluations and documentation for lost wages and loss of earning capacity." Neither a signed medical authorization nor a signed release of information form was requested by Atlantic at that time.

On February 24, 2017, Michael's counsel made a formal demand upon Atlantic for the UIM limits under the Saifs' policy. The demand included, inter alia, medical records related to treatment between the date of Michael's accident and September 2, 2016; tax returns from Michael's business for the years 2012 to 2015; a profit-and-loss statement of the business for 2016; an "[o]ffer of employment from Alliance Partnership" to Michael dated March 8, 2016; and a detailed description of the injuries Michael sustained from the accident. The demand did not refer to any claim for UIM benefits by Mary Sue. On March 2, 2017, counsel for Atlantic confirmed receipt of Michael's demand and requested certain additional

- 447 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

medical records, including copies of previously provided records. Those records were provided on March 7.

On March 16, 2017, Michael's counsel attempted to contact Atlantic's counsel to inquire into the status of Atlantic's response to Michael's demand. That same date, attorney Michael Moran responded to Michael's counsel, acknowledging receipt of the demand, and informed him that the matter had been transferred to him as outside counsel. After a month, on April 17, a paralegal with Moran's office sent a letter to Michael's counsel requesting a second signed authorization for health information in order to allow Atlantic to "obtain all medical records for an evaluation of [Michael's] damage claim." No signed authorization was provided in response to this request.

On April 26, 2017, Michael's counsel left a voice mail message with Moran, advising him that since no response had been received to Michael's counsel's demand, he would be filing suit. On May 2, Moran followed up Atlantic's request for a second authorization for health information and sought to schedule an examination under oath (EUO) at some point in the future after Atlantic had received the additional medical records sought through the second authorization. The request for the EUO did not specify a date, time, or place for the examination. A representative for Atlantic later testified that it sought to examine Michael due to the size of the claim and his subjective claims of how the accident affected his quality of life.

On May 10, 2017, without having signed the second authorization for health information, or responding to the request for an EUO, the Saifs filed suit against Atlantic. The complaint alleged two causes of action: (1) Atlantic erroneously refused to pay Michael UIM benefits in breach of the terms of the Saifs' policy with Atlantic, and (2) Mary Sue suffered a loss of Michael's society, comfort, support, and companionship, and as his spouse, she too was entitled to UIM benefits erroneously refused by Atlantic.

- 448 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

On June 2, 2017, Atlantic filed an answer to the Saifs' complaint, as well as a motion for summary judgment, even though no formal discovery had taken place to date. The Saifs subsequently filed a motion for continuance on Atlantic's motion for summary judgment, alleging that Atlantic was required to show prejudice from the Saifs' alleged failure to cooperate and that further discovery was required before the Saifs could "offer a meaningful response to [Atlantic's] Motion for Summary Judgment." That motion was sustained, and further discovery was ordered by the district court.

On December 20, 2018, Atlantic filed an amended motion for summary judgment, alleging that "no genuine issue of material fact exists as to [the Saifs'] material breach of the policy of insurance and that [Atlantic] was prejudiced at the time of the breach" insomuch as it was denied the opportunity to investigate and adjust the claims of the Saifs and was subjected to unnecessary legal expenses.

A hearing was held on Atlantic's amended motion for summary judgment on February 11, 2019. After receiving evidence and hearing the arguments of both parties, the district court sustained the motion, granting summary judgment for Atlantic on both causes of action. In its order, the district court made explicit findings that (1) Michael breached the cooperation provisions of the policy and his refusal to cooperate prejudiced Atlantic's ability to investigate the claim without the expense and delay of litigation, (2) Atlantic did not waive the cooperation provisions, and (3) Atlantic did not refuse to pay UIM benefits to Mary Sue under the policy. This appeal followed.

## ASSIGNMENTS OF ERROR

The Saifs assign, restated, that the district court erred in concluding there were no genuine issues of material fact and in granting Atlantic's motion for summary judgment based on its findings that (1) Michael failed to cooperate, which failure was material and prejudicial to Atlantic; (2) Atlantic did not forfeit its right to assert its affirmative defenses as a result

- 449 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

of its unreasonable delay in investigating the Saifs' claims and failure to respond to the Saifs' demand in a timely manner; and (3) Mary Sue was required, and failed, to make a demand prior to filing suit.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Midland Properties v. Wells Fargo*, 296 Neb. 407, 893 N.W.2d 460 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

[3,4] Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute. *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013). If a genuine issue of fact exists, summary judgment may not properly be entered. *Id*.

[5-7] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Id*. After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id*. In the summary judgment context, a fact is material only if it would affect the outcome of the case. *Id*.

- 450 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

## 1. Breach of Cooperation Clause

The Saifs first contend that summary judgment was improperly granted because the district court erred in resolving factual issues concerning Michael's alleged failure to cooperate as a matter of law in favor of Atlantic.

The relevant portion of the Saifs' UIM policy, "Part E - Duties After an Accident or Loss," provides:

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

a. To physical exams by physicians we select. We will pay for these exams.

b. To examination under oath and subscribe the same.

4. Authorize us to obtain:

a. Medical reports; and

b. Other pertinent records.

5. Submit a proof of loss when required by us.

The parties do not dispute that Atlantic requested a second medical authorization on April 17, 2017. That request sought Michael's authorization for Atlantic to "obtain all medical records for an evaluation of [Michael's] damage claim." The Saifs do not dispute that Michael failed to execute the second medical authorization by the time of the summary judgment hearing. However, the record is absent of any evidence that Michael refused to ever provide such an authorization. There also does not appear to be any dispute that on May 2, a

- 451 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

week after the Saifs indicated their intent to file their lawsuit, Atlantic requested that Michael sit for an EUO, although no date, time, or place was scheduled. While the EUO had not taken place by the time of the summary judgment hearing, there is nothing in the record to indicate that Michael refused to ever cooperate with that request. In sum, there is no evidence that Michael outright refused to cooperate; thus, there is no direct evidence of a breach of the cooperation provision itself. Rather, it appears that the only evidence of a possible breach is the undisputed fact that the Saifs filed their lawsuit before such an authorization was executed and before an EUO took place. This would arguably constitute a breach of the policy terms which direct that no legal action may be brought against the insurer until there has been full compliance with all terms of the policy.

[8-10] But even if we assume without deciding that the facts establish as a matter of law that Michael breached the cooperation clause simply by filing a lawsuit before complying with the request for a medical authorization and submitting to an EUO, this case cannot be decided as a matter of law on the issue of whether Atlantic was prejudiced by Michael's failure to cooperate as to those matters prior to filing his action. This is because an insurer cannot assert a breach of a policy's cooperation provision as a policy defense in the absence of showing prejudice or detriment to the insurer. See *Mefferd v. Sieler & Co.*, 267 Neb. 532, 676 N.W.2d 22 (2004) (to be entitled to summary judgment, insurer must establish, as matter of law, that there was breach of cooperation provision and breach prejudiced insurer). It is the insurer's burden to prove the breach resulted in prejudice. See *id*. The Saifs contend that there are material facts in dispute regarding the issue of prejudice and that when construed in their favor, summary judgment should not have been granted against them. We agree.

[11] Normally, the question of whether an insured's breach of a cooperation clause prejudiced an insurer is a question

- 452 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

of fact, and will seldom be decided as a matter of law. See, e.g., *Smith v. Nationwide Mut. Ins. Co.*, 175 Vt. 355, 830 A.2d 108 (2003); *Staples v. Allstate Ins. Co.*, 176 Wash. 2d 404, 295 P.3d 201 (2013). But see *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 669 N.W.2d 462 (2003) (insurance companies prejudiced as matter of law by insured's failure to answer questions when interviewed under oath; summary judgment granted in favor of insurance companies). The dissent relies heavily on *Wright v. Farmers Mut. of Neb., supra*, in support of its position that this case is factually similar and, therefore, controlling. However, we would note that in *Wright*, the insurers were relying on the affirmative defense that the insured had been engaged in submitting a fraudulent claim. There is no such assertion in this case, and therefore, the factual issues pertinent to establishing prejudice are quite different.

Atlantic claims that Michael's lack of cooperation prejudiced its "ability to investigate [Michael's] claim and deprived [Atlantic] of a fair opportunity to make a decision on the claim prior to being subjected to suit." Brief for appellee at 8. Atlantic further argues that Michael's breach "subjected [Atlantic] to litigation defense costs." *Id*. at 18.

[12,13] The purpose of a cooperation provision in a contract is to ensure that an insurer has an opportunity to protect its interests. See *Rent-A-Roofer v. Farm Bureau Prop. & Cas. Ins. Co.*, 291 Neb. 786, 869 N.W.2d 99 (2015). See, also, *Mefferd v. Sieler and Co., supra* (prejudice is established by examining whether insurer received notice in time to meaningfully protect its interests).

[14] As previously noted, an insurer cannot assert a breach of the cooperation clause as a policy defense in the absence of a showing of prejudice or detriment to the insurer. See *Mefferd v. Sieler & Co., supra*. See, also, *MFA Mutual Ins. Co. v. Sailors*, 180 Neb. 201, 141 N.W.2d 846 (1966). Regardless of the nature of the breach, there must be a showing of detriment or prejudice to the insurer. See *MFA Mutual Ins. Co. v. Sailors, supra*. See, also, *Campbell v. Allstate Ins. Co.*, 60

- 453 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

Cal. 2d 303, 384 P.2d 155, 32 Cal. Rptr. 827 (1963) (insured's failure to communicate with and give statement to insurer was breach of cooperation provision, but presumption of prejudice does not arise from violation of cooperation clause); *White v. Boulton*, 259 Minn. 325, 107 N.W.2d 370 (1961) (insured's failure to attend trial may be breach of cooperation provision, but insurer must show it was prejudiced by such absence); *Allen v. Cheatum*, 351 Mich. 585, 88 N.W.2d 306 (1958) (mere showing of nonattendance of insured at trial is not tantamount to showing of prejudicial noncooperation as matter of law).

[15] In jurisdictions where a showing of prejudice to the insurer is required, it is usually inevitable that the merits of the main case must be developed to some extent when the defense of noncooperation is raised. That is frequently the only way the triers of fact can intelligently appraise and determine whether actual prejudice did or did not exist. *White v. Boulton, supra*.

[16] When an insured seeks coverage for his or her own loss, the issue is whether the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid. If the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist. See 1 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 3:2 (6th ed. 2013).

There is little case law in Nebraska regarding a failure to comply with a cooperation provision where an insured is seeking recovery from the insured's insurance company for his or her own loss. In *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 669 N.W.2d 462 (2003), the district court sustained the insurance companies' motions for summary judgment because the insured concealed information on her insurance applications about a previous fire and failed to answer questions when interviewed under oath as required by the policies. The Nebraska Supreme Court found that the record contained

- 454 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

averments that the insured's refusal to answer questions and provide documents hindered the investigation of the claims and prejudiced the insurance companies. The insured did not present evidence to dispute the claims of prejudice. The Supreme Court held that the failure to provide material information under a clause requiring the insured to submit to an examination under oath was a material breach of the contract. The Supreme Court further determined that the insurance companies provided evidence that the breach prejudiced their investigation of the claims and that the insured had not presented evidence to dispute the claims of prejudice. It concluded that the district court correctly granted the insurance companies' motions for summary judgment. The Supreme Court further stated that it did not need to address whether there was an issue of material fact that the insured intentionally misrepresented or concealed information when she obtained her policies.

As noted earlier, *Wright v. Farmers Mut. of Neb., supra*, is distinguishable from the present matter because it involved a possible fraudulent claim and an insured's concealment of information and refusal to answer material questions, which is not the case here. Atlantic's claim of prejudice is not based on any alleged fraudulent concealment or behavior by Michael; there is no question Michael suffered significant injuries from the accident. Rather, Atlantic's claim of prejudice rests entirely on the notion that Michael filed a lawsuit before providing a second medical authorization and before submitting to an EUO. Atlantic alleges it was prejudiced in its ability to investigate the claim and determine if Michael had been fully compensated by his earlier settlement with Vasa's insurer. Atlantic states that at the time the demand was received, there was a 5-month gap in Michael's medical records, which prevented Atlantic from reviewing objective medical information concerning Michael's current condition. It further alleges that it had no medical records that predated the accident, so it had no way of assessing the claim that Michael was "'completely changed'" by the accident. Brief for appellee at 17.

- 455 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

Atlantic's evidence of prejudice consisted of an affidavit of a claims supervisor for Atlantic, which stated that Atlantic was "unable to conduct a meaningful assessment of Michael's alleged damages due to his refusal to provide access to his medical history and refusal to submit to an [EUO]" and that Atlantic was "unable to conduct an adequate evaluation of Michael's claim before being subject to this litigation." The claims supervisor also stated in her deposition that Atlantic was prejudiced because it was unable to complete its investigation. In addition, an assistant vice president in Atlantic's claims department was asked in his deposition how Atlantic had been prejudiced. He stated that Atlantic was not allowed to complete its investigation by meeting with Michael. He further stated he believed that Atlantic was subject to unnecessary legal expenses because of the defense costs it was now incurring and that Atlantic was unnecessarily subject to potential legal fees under Nebraska law.

However, there is substantial evidence that Atlantic had multiple opportunities to obtain the information it sought either immediately upon the demand letter being received or in the years following its receipt of notice of the claim following the accident. Atlantic first received notice of a potential claim by Michael on November 6, 2014. Michael's counsel reaffirmed his intent to submit a claim in February and October 2016, as well as January 2017. A formal demand was made on February 24. Despite knowledge of an impending UIM demand, Atlantic did not utilize the first medical authorization from April 2015, which would have allowed it to obtain medical records predating the accident to the extent it thought that may be necessary. Nor did Atlantic at any point request a list of prior medical providers or prior medical records, which it now claims was necessary for its investigation. And while Atlantic claims that these requests were not made because a "formal" demand had not yet been made by the Saifs, it nevertheless did not send its second medical authorization request until April 17, 2017, nearly 2 months after the formal demand was made and

- 456 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

after Michael had already supplemented documents in response to Atlantic's request. Atlantic also did not request Michael to sit for an EUO until May 2, over 2 months following the formal demand and a week after the Saifs indicated their intent to file this lawsuit. And notably, Atlantic did not specify an actual date, time, or place for its requested EUO.

[17] Atlantic had knowledge of a potential claim from the time it received notice in November 2014 and was kept "in the loop" on an ongoing basis. It could have conducted its own investigation at any time, but elected not to do so. Instead, it waited 30 months from the date it was notified of Michael's UIM claim to request a medical authorization and EUO. Unlike the circumstances in *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 669 N.W.2d 462 (2003), Michael has not refused to provide material information. To the contrary, Michael has remained in continual contact with Atlantic, Michael has supplied substantial medical documentation to Atlantic, and there is no evidence that he has intentionally misrepresented or concealed information or that his claim is fraudulent. When an insured has provided a significant amount of information that has been requested by an insurer, a fact finder could conclude that "to whatever extent additional information was not provided, the failure did not prevent (or should not have prevented) [the insurer] from making a reasonable estimate of [the insured's claim]." *Cribari v. Allstate Fire & Casualty Ins. Company*, 375 F. Supp. 3d 1189, 1201 (D. Colo. 2019). In many cases where summary judgment is granted in favor of the insurer, the failure to cooperate was an effort by the insured to prevent the insurer from discovering the claim was fraudulent. See *id*. In *Cribari*, the insured "was indisputably injured, and there [was] no suggestion that the failure to provide additional information was part of a plot to conceal a fraudulent claim." *Id*. See, also, *King v. Federal Insurance Co.*, 788 F. Supp. 506 (D. Kan. 1992) (while records withheld were material and would have been helpful, no evidence produced that insured's failure to give

- 457 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

up records prejudiced defendant's defense once suit was filed); *Ahmadi v. Allstate Ins. Co.*, 22 P.3d 576 (Colo. App. 2001) (right to recover under policy may be forfeited only when, in violation of policy provision, insured fails to cooperate with insurer in some material and substantial respect); *Wallace v. Woolfolk*, 312 Ill. App. 3d 1178, 728 N.E.2d 816, 245 Ill. Dec. 734 (2000) (insurer must act in good faith to secure insured's cooperation; insurer failed to allege facts showing reasonable diligence in getting insured to cooperate early on in litigation); *Mazzuca v. Eatmon*, 45 Ill. App. 3d 929, 360 N.E.2d 454, 4 Ill. Dec. 518 (1977) (whether insured breached cooperation clause requires insurer to show it exercised reasonable degree of diligence in seeking insured's participation, and insured's lack of participation represented willful refusal to cooperate); *Boone v. Lowry*, 8 Kan. App. 2d 293, 657 P.2d 64 (1983) (breach of cooperation clause must cause substantial prejudice to insurer's ability to defend itself; burden of proof to establish policy defense is on insurer).

A fact finder could certainly conclude that Atlantic's evidence did not establish that Michael's failure to sign the second medical authorization or submit to the EUO before filing his lawsuit prevented Atlantic from completing a reasonable investigation or that the information it sought was materially significant in determining the validity or value of Michael's claim. A fact finder could also conclude that Atlantic was not reasonably diligent in securing Michael's cooperation earlier in the process when initially notified of the accident and when first provided with a medical authorization. Therefore, in viewing the evidence in the light most favorable to the Saifs, we cannot say that Atlantic established as a matter of law that it suffered substantial prejudice from Michael's failure to cooperate. Because there remain issues of material fact as to whether Michael's filing of a lawsuit, before signing a second medical authorization and before submitting to an EUO, was prejudicial, we find that summary judgment on Michael's claim was inappropriate.

- 458 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

## 2. ATLANTIC'S AFFIRMATIVE DEFENSES

[18,19] The Saifs next argue that the district court also erred in resolving factual issues concerning whether or not Atlantic waived its right to the defense of failure to cooperate by its unreasonable delay in processing the Saifs' claim. We agree. Our review of the record reveals there were genuine issues of material fact as to whether Atlantic unreasonably delayed processing the Saifs' claim and whether such amounted to a denial of coverage of the claim and, therefore, a breach waiving the right to insist on the cooperation clause. See, *D & S Realty v. Markel Ins. Co.*, 280 Neb. 567, 588, 789 N.W.2d 1, 17-18 (2010) ("[a] party may prove the waiver by (1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive [the right]"); *Otteman v. Interstate Fire & Cas. Co., Inc.*, 172 Neb. 574, 111 N.W.2d 97 (1961) (unreasonable delay amounts to denial of coverage and constitutes waiver of any right to insist on certain policy provisions).

The Saifs argue that the Unfair Insurance Claims Settlement Practices Act, Neb. Rev. Stat. §§ 44-1536 to 44-1544 (Reissue 2010 & Cum. Supp. 2018), provides a guidepost to measure whether Atlantic was reasonable in its investigation of the Saifs' claim. See, e.g., § 44-1540 (it shall be unfair claims settlement practice to "[n]ot attempt[] in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear"). However, the reasonableness of Atlantic's claim handling, investigation, and purported unreasonable delay are issues of fact that should be resolved on remand.

## 3. MARY SUE'S LOSS OF CONSORTIUM CLAIM

The Saifs' final assignment of error is that the district court erred in finding that Mary Sue was required, and failed, to make a demand with Atlantic prior to filing suit. The Saifs

- 459 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

argue, in the alternative, that if Mary Sue was obligated to make a demand prior to filing suit, there are genuine issues of material fact as to whether the demand was necessary due to Atlantic's prior denial of Michael's claim through its unreasonable delay.

We first note that in the Saifs' complaint, the following allegation was made: "That . . . Mary Sue . . . has made demand upon [Atlantic] for payment of benefits under the [UIM] coverage of the policy issued by [Atlantic] to the [Saifs], but [Atlantic] has failed and refused to make payment to the [Saifs] pursuant to the terms of the policy." This allegation was denied by Atlantic in its answer, and the record before us would indicate that no formal demand was made by Mary Sue for a loss of consortium claim prior to filing suit. The district court came to the same conclusion. It found that the evidence was uncontroverted that Mary Sue never submitted a claim to Atlantic before filing this lawsuit.

[20] The Saifs argue on appeal that Mary Sue was not required to make a demand for benefits prior to filing suit. See *Fink v. Denbeck*, 206 Neb. 462, 465, 293 N.W.2d 398, 401 (1980) ("[t]he general rule is that a demand for performance is not necessary unless required by the terms of the contract or its peculiar nature"). However, we conclude that the terms of the insurance policy at issue, specifically the cooperation agreement, required Mary Sue to make a demand for payment of benefits prior to filing suit. Because she did not make a demand, she breached the contract as a matter of law.

[21] However, just as set forth above in regard to Michael's breach, Atlantic had to prove that Mary Sue's breach resulted in prejudice to Atlantic. See *Mefferd v. Sieler & Co.*, 267 Neb. 532, 676 N.W.2d 22 (2004). Atlantic presented evidence in regard to prejudice in the affidavit of its claims supervisor. The affidavit stated that Atlantic was unable to conduct a meaningful assessment of Mary Sue's damages prior to her filing suit; was deprived of an opportunity to investigate or evaluate her claim; was prejudiced by her breach; and was

- 460 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

forced to incur litigation defense costs it may have avoided. The evidence also showed that Atlantic had knowledge of Michael's potential claim since November 2014 and knew that Michael was married and that his wife was an insured under the policy. Atlantic also had general knowledge of Michael's injuries. Mary Sue's cause of action is for the "loss of the society, comfort, support and companionship of her husband, Michael." In other words, Mary Sue raised a claim for loss of consortium, which is a derivative claim that is entirely dependent on Michael's claim. See *Erickson v. U-Haul Internat.*, 278 Neb. 18, 767 N.W.2d 765 (2009) (loss of consortium claims are derivative and are based upon injured spouse's right to recover for direct injuries). See, also, *Rasmussen v. State Farm Mut. Auto Ins. Co.*, 278 Neb. 289, 770 N.W.2d 619 (2009). Thus, Atlantic did not establish as a matter of law that it was prejudiced by Mary Sue's failure to file a demand prior to filing a lawsuit where her claim is tied to Michael's. Accordingly, Mary Sue's loss of consortium claim should have survived the motion for summary judgment, and we remand this issue for further proceedings.

## CONCLUSION

Based on the foregoing reasons, we find there were genuine issues of material fact in this case and summary judgment was inappropriate. We reverse the district court's order granting Atlantic's motion for summary judgment and remand the cause for further proceedings.

Reversed and remanded for
further proceedings.

Pirtle, J., participating on briefs.

Riedmann, Judge, dissenting.

Contrary to the district court's order, the majority "assume[s] without deciding" that an insured's failure to sign a medical authorization and sit for an examination under oath (EUO) constituted a breach of his obligations under a policy of insurance, but holds that material issues of fact exist as to whether

- 461 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

the insurer was prejudiced as a result. It also holds that despite a complete failure to make a demand upon the insurer prior to filing suit, material issues of fact exist as to the viability of a derivative claim. Based upon Nebraska case law and the unrebutted evidence presented by the insurer as to the prejudice it suffered, I agree with the district court that the insurer was entitled to judgment as a matter of law on both claims. I therefore would affirm the district court's order dismissing the appellants' complaint.

*Breach of Cooperation Clause.*

Michael F. Saif and Mary Sue Saif's policy of insurance informed them that their insurer, Atlantic States Insurance Company (Atlantic), would have no duty to provide coverage under the policy unless there has been "full compliance" with the duties set forth in the policy. Those duties included a duty to "Submit, as often as [Atlantic] reasonably require[s]: . . . To [EUO] and subscribe the same" and to "Authorize [Atlantic] to obtain: . . . [m]edical reports; and . . . [o]ther pertinent records." The policy further provides that "[n]o legal action may be brought against [Atlantic] until there has been full compliance with all the terms of this policy." Michael was involved in a bicycle-pickup accident in October 2014; he claims the driver of the pickup that struck him was underinsured. After settling with the driver's insurer in May 2015, he made a formal demand for underinsured motorist (UIM) coverage with Atlantic in February 2017. Prior to Atlantic's accepting or rejecting the demand, the appellants filed suit against Atlantic in May 2017.

The evidence is uncontroverted that in July 2015, after requesting a medical authorization from Michael, Atlantic was advised that Michael's counsel does not give medical authorizations to insurance companies. It is also uncontroverted that on April 17, 2017, Atlantic requested Michael to sign a medical authorization and that he did not do so. The majority concedes that Michael "failed" to sign that medical authorization, despite his contractual obligation to do so under the policy, but

- 462 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

dismisses it because "the record is absent of any evidence that Michael refused to ever provide such an authorization." The majority ignores both the July 2015 statement of Michael's counsel and the statement contained in his affidavit offered at the summary judgment hearing in 2019 that "no purpose would be served by granting [Atlantic] a medical authorization to secure copies of records already in [its] possession and provided by [Michael]." In addition to the only inference that can be drawn from these two statements, the affidavit of Atlantic's claims supervisor confirms that Michael never provided the requested authorization. The affidavit states that Atlantic "has been unable to conduct a meaningful assessment of Michael's alleged damages due to his refusal to provide access to this medical history and refusal to submit to an [EUO]." The record, therefore, does include evidence that Michael's refusal to sign a medical authorization continued throughout the duration of the proceedings. Even the appellants, themselves, do not advance the majority's supposition that Michael belatedly complied or offered to comply.

However, even if Michael had agreed to sign an authorization after he filed suit, it would not negate his prior breach. See *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 808, 669 N.W.2d 462, 467 (2003) (finding material breach of policy for failing to comply with policy requirements and recognizing that "in several instances, courts have held that a later promise to comply was too late and could not cure the breach"). The *Wright* court cited *Monticello Ins. Co. v. Mooney*, 733 So. 2d 802 (Miss. 1999), for the proposition that a belated promise to comply with a policy's cooperation clause could not cure an insured's failure to cooperate before litigation. No genuine issue of material facts exists as to whether Michael materially breached the policy of insurance by failing to provide a signed medical authorization, and the district court was correct in its finding.

Michael also failed to sit for a requested EUO in violation of the policy. When asked that he do so, Michael's counsel

- 463 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

responded, "It occurs to me that if we are going to do discovery before I get an answer to my demand, we might as well have the case on file." As with the medical authorization, the majority claims that "[w]hile the EUO had not taken place by the time of the summary judgment hearing, there is nothing in the record to indicate that Michael refused to ever cooperate with that request." This statement again ignores the averment contained in Atlantic's affidavit that it "has been unable to conduct a meaningful assessment of Michael's alleged damages due to his refusal to provide access to this medical history and refusal to submit to an [EUO]." Michael presented no evidence at the summary judgment hearing to refute the statement that he refused to submit to an EUO. Even if Michael would have agreed to a deposition after filing suit, doing so would not cure the breach. See *Archie v. State Farm Fire & Cas. Co.*, 813 F. Supp. 1208, 1213 (S.D. Miss. 1992) (stating insured's agreement to sit for deposition after filing suit "hardly satisfies the spirit or intent of insurance policy clauses mandating oral examinations"). Michael's refusal to sit for an EUO constituted a material breach of the policy, and the district court was correct in so finding.

*Atlantic Was Prejudiced*
*as Matter of Law.*

Although many jurisdictions have viewed compliance with insurance policy provisions as a condition precedent to recovery, Nebraska requires that an insurer show prejudice before coverage can be denied. See *Wright v. Farmers Mut. of Neb., supra*. According to the majority, genuine issues of material fact exist as to whether Atlantic was prejudiced by Michael's breach of the policy. I disagree.

In *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 669 N.W.2d 462 (2003), the Nebraska Supreme Court found prejudice as a matter of law and entered summary judgment in favor of an insurer based upon the insured's failure to answer questions during an EUO. In *Wright*, the insured refused to answer certain questions, including questions regarding her

- 464 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

finances, properties owned, insurance held, and prior claims made. She also initially refused to produce certain documents, including her tax returns. Consequently, the insurers denied coverage and the insured filed suit. The insurers answered, claiming that the insured breached the policy in that she concealed certain material facts and failed to comply with the EUO. Both parties moved for summary judgment.

The district court held that the insured concealed information and materially breached the insurance contracts when she refused to answer questions during the EUO; thus, it granted summary judgment in favor of the insurers. On appeal, the Supreme Court recognized that the "effect of an insured's refusal to answer questions in an [EUO] is an issue of first impression in Nebraska." *Id*. at 806-07, 669 N.W.2d at 466. It recognized, however, that it has held that "an insurer may assert a breach of a cooperation clause as a defense when the insurer was prejudiced by the lack of cooperation." *Id*. at 807, 669 N.W.2d at 466, citing *MFA Mutual Ins. Co. v. Sailors*, 180 Neb. 201, 141 N.W.2d 846 (1966). It concluded that the failure to provide material information under a clause requiring the insured to submit to an EUO was a material breach of the contract that may be raised by the insurer when the insurer shows prejudice.

After finding the information sought by the insurers was material, the *Wright* court determined: "[T]he insurance companies provided evidence that the breach prejudiced their investigation of the claims; [the insured] has not presented evidence to dispute the claims of prejudice." 266 Neb. at 808, 669 N.W.2d at 467. The only evidence identified in the opinion regarding prejudice is as follows: "The record contains averments that [the insured's] refusal to answer questions and provide documents hindered the investigation of the claims and prejudiced [the insurers]. [The insured] did not present evidence to dispute the claims of prejudice." *Id*. at 805-06, 669 N.W.2d at 465. Consequently, it affirmed the grant of summary judgment in favor of the insurers.

- 465 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

As in *Wright*, Atlantic averred that Michael's failure to submit to an EUO and sign a medical authorization hindered its investigation of the claim and prejudiced it. It produced evidence in the form of affidavits and deposition testimony. Daniel Hystad, who oversees Atlantic's claims department, explained in his deposition that Michael had already received close to $1 million from the tort-feasor's insurer and was demanding Atlantic's policy limits of $500,000. He stated that Michael claimed he suffered "mental declination [and] physical declination" and that "he wasn't the man he used to be." Based upon Michael's claims and his significant lost wage claim, an EUO was requested because it was important to "get it unfiltered. Because the witness, how they tell their story, that also affects the value of the case."

Hystad explained that given the amount of money Michael already received, Hystad was not convinced that Michael had not been "made whole" and "having the opportunity to visit with [Michael] directly would have been the best way to obtain that information." Hystad elaborated that there were several ways in which the inability to conduct an EUO prejudiced Atlantic, stating:

> One, we were not allowed to complete our investigation by visiting with [Michael]. I believe we are now subject to unnecessary legal expenses because of the defense costs we're incurring with this suit. And I believe now we are unnecessarily subject to the potential legal fees under Nebraska law, when had we been able to simply get the [EUO], the answer, we probably could have brought this to a resolution.

A claims supervisor for Atlantic also testified as to the value of an EUO in Michael's case:

> To be able to sit and talk with him and find out how did this accident and his injuries affect his life. How does it affect what he could no longer do as opposed to what he could do before. How did it affect his ability to make an income, his working.

- 466 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

As to Michael's failure to provide a signed medical authorization, Hystad explained that in September 2016, Michael's counsel indicated that Michael was still receiving medical treatment, but in the demand letter packet, there were no records beyond that date. Current records were necessary to assist Atlantic in evaluating whether Michael was continuing to improve. Additionally, there were no medical records prior to the date of the accident that would provide a baseline for Michael's preinjury condition.

The appellants provided no evidence at the summary judgment hearing to refute Atlantic's evidence that it was prejudiced. Rather, they set forth the chronology of the case and asserted that Atlantic did not request a medical authorization prior to April 17, 2017, nor request an EUO until May 2. They did not refute Atlantic's evidence that it had been told in 2015 that a medical authorization would not be provided or that without a medical authorization, Atlantic was unable to obtain medical records that predated the accident or postdated September 2017. They did not produce evidence to refute Atlantic's assertion that seeing how a witness presents his story affects the value of a claim. As in *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 669 N.W.2d 462 (2003), they did not set forth any evidence to refute Atlantic's claims of prejudice.

The majority distinguishes *Wright* from the present matter, because *Wright* involved a possible fraudulent claim. It states that because fraud was an assertion, "the factual issues pertinent to establishing prejudice are quite different." But the validity of an insured's claim is the threshold issue in any first-party claim. The majority recognizes that in a first-party claim, "the issue is whether the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid." Atlantic asserted it was unable to do so without the EUO and the medical authorization, and Michael presented no evidence to the contrary. Atlantic further stated it was not able to ascertain whether Michael had

- 467 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

been made whole by the payment of the nearly $1 million settlement from the tort-feasor's insurer and, if not, to what extent he remained uncompensated. The majority recognizes the proposition of law that "[i]f the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist," citing 1 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 3:2 (6th ed. 2013), yet the majority fails to apply it here.

Other jurisdictions in first-party claims have found prejudice as a matter of law when an insured fails to provide documents or submit to an EUO. See, e.g., *Piser v. State Farm Mut. Auto. Ins. Co.*, 405 Ill. App. 3d 341, 938 N.E.2d 640, 345 Ill. Dec. 201 (2010) (affirming order dismissing insured's complaint for failure to sign financial authorization and submit to EUO and finding prejudice as matter of law); *Rymsha v. Trust Ins. Co.*, 51 Mass. App. 414, 746 N.E.2d 561 (2001) (insured's refusal to furnish requested information put insurer in untenable position of either paying claim without ability to investigate its validity or being sued for breach of contract; prejudice to insured too obvious to warrant discussion); *Tran v. State Farm Fire and Cas. Co.*, 136 Wash. 2d 214, 961 P.2d 358 (1998) (if insurers are inhibited in their effort to process claims due to uncooperativeness of insured, they suffer prejudice); *Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wash. App. 712, 950 P.2d 479 (1997) (where insured refuses to produce documents, insurer prejudiced as matter of law by its inability to complete its investigation of claim and risk of litigation if it denied claim). See, also, *Lorenzo-Martinez v. Safety Ins. Co.*, 58 Mass. App. 359, 790 N.E.2d 692 (2003) (holding that insurer's heightened need for reliable information on uninsured motorist claim mandates rule that insured's willful, unexcused failure to submit to EUO constitutes breach of standard automobile insurance contract resulting in forfeiture of coverage for uninsured motorist benefits without proof of actual prejudice resulting to insurer's interests).

Rather than focusing on whether the appellants' actions pre-
vented Atlantic from completing its investigation prior to being
subject to suit, the majority focuses on what Atlantic "could
have done" from the moment it was advised of a potential
UIM claim. It asserts that Atlantic was "kept 'in the loop' on an
ongoing basis," but the following chronology establishes that it
was Atlantic that consistently prodded Michael for a status of
his potential claim once he settled with the tort-feasor:

• 10/01/14: Accident.
• 11/06/14: Michael's counsel notifies Atlantic of potential
uninsured or UIM claim for Michael.
• 04/01/15: Michael's counsel notifies Atlantic of tentative
settlement with the tort-feasor and encloses medical authori-
zation valid for 45 days.
• 05/09/15: Atlantic notifies Michael's counsel that it would not
substitute its policy limits and that it authorizes settlement
with the tort-feasor.
• 07/28/15: Atlantic orally requests medical authorization. A
paralegal for Michael's counsel responds that her office does
not give medical authorizations to insurance companies but
that she would check with Michael's counsel.
• 02/16/16: Michael's counsel reaffirms intent to submit UIM
claim at later date.
• 09/08/16: Atlantic inquires when and if a UIM demand will
be made.
• 10/10/16: Michael's counsel responds that the UIM claim
is coming but that Michael is still being treated. Michael's
counsel states that when medical records are received, a
demand will be made.
• 01/31/17: Atlantic inquires again whether a UIM claim is
coming. Michael's counsel responds that it can expect "a
policy limit demand within the week."
• 02/01/17: Atlantic advises of additional documents it needs to
accompany the demand.
• 02/24/17: Michael's counsel sends formal demand for policy
limits of $500,000 for Michael's UIM claim.

- 03/02/17: Atlantic's counsel acknowledges demand and requests additional medical records. He advises that Atlantic is "reviewing" Michael's demand and materials in order to evaluate the same.
- 03/07/17: Michael's counsel sends flash drive with additional medical records.
- 03/16/17: After Michael's counsel inquires as to status of the demand, Atlantic's counsel responds that Atlantic is continuing to review the "voluminous supporting materials."
- 04/17/17: Atlantic's counsel requests medical authorization "which will allow [Atlantic] to obtain all medical records for an evaluation of [Michael's] damage claim."
- 04/26/17: Michael's counsel leaves voice mail advising he is filing suit.
- 05/02/17: Atlantic's counsel follows up on the status of the medical authorization, and he requests an EUO. He also quotes policy language setting forth insured's duty to authorize the collection of medical reports and other records and to sit for an EUO.
- 05/10/17: Michael's counsel files lawsuit. He advises that "if we are going to do discovery before I get an answer to my demand, we might as well have the case on file."

The majority asserts that Atlantic could have utilized the first medical authorization from April 2015 to obtain Michael's records; however, the authorization expired in 45 days and would have done nothing to assist Atlantic in obtaining medical records from June 2015 through February 2017 when the demand was finally made. Hystad explained that Michael's counsel had advised in September 2016 that Michael continued to seek medical treatment, so current records would be necessary to evaluate whether Michael continued to improve and what his current condition was.

The majority is critical of Atlantic for not requesting a second medical authorization until "nearly 2 months after" receipt of the formal demand; however, the evidence indicates that Atlantic was advised in July 2015 that the appellants'

- 470 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

counsel does not provide medical authorizations to insurance companies. The affidavit of the appellants' counsel offered at the summary judgment hearing makes clear that regardless of whether an authorization was requested earlier following the demand, one would not have been provided. The affidavit states that "at the time [the] request was made, a copy of all of [Michael's] medical records had been provided to [Atlantic]; that no purpose would be served by granting [Atlantic] a medical authorization to secure copies of records already in [its] possession and provided by [Michael]."

The evidence reveals that as of the date of the summary judgment hearing, an authorization was never signed, and that an earlier request for an authorization would not have been granted. Not all of the medical records were included in the demand, and although additional records were received on March 7, 2017, at the time the EUO was requested on May 2, Atlantic was still missing medical records that predated the accident and postdated September 2016. Therefore, Atlantic's decision not to make another request for a medical authorization between July 2015 and April 2017 does not negate its assertion that it was prejudiced by Michael's failure to sign a medical authorization, nor does it create a genuine issue of material fact on the issue.

The majority is also critical of Atlantic for not requesting an EUO until May 2, 2017. However, the evidence reveals that Atlantic received the demand packet on February 27, which consisted of voluminous attachments, including medical records from October 1, 2014, through September 2, 2016. On March 7, 2017, Atlantic received additional medical records. It requested an EUO to be scheduled after receipt of additional medical records it hoped to obtain with the medical authorization it had requested. Hystad explained that an EUO was not requested prior to the formal demand because Atlantic had been advised that Michael was still being treated and that the claim "wasn't ripe or it wasn't ready to be settled . . . at that point." The purpose for delaying an EUO was to avoid

- 471 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

having to "do it twice." The appellants presented no evidence to counter this position.

The majority essentially determines that Atlantic failed to start its investigation early enough and that therefore, whether Michael's failure to sign the medical authorization and submit to an EUO prejudiced Atlantic is a question of fact. But it recognizes that "the issue is whether the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid." One of the insureds, Michael, did not submit his demand until February 24, 2017, and even if Atlantic had requested a medical authorization prior to April 17, the uncontroverted evidence is that Michael's counsel would not have agreed to Michael's signing it. And, as stated by Hystad, it would be futile to take an EUO prior to receipt of all requested information.

To fully evaluate Michael's claim, Atlantic required a signed medical authorization to investigate how and if Michael's current condition differed from his preaccident condition and Atlantic was contractually entitled to the opportunity to conduct an EUO, but Michael filed suit before complying with either of those requests. As attested to by Atlantic's claims supervisor, Atlantic was "unable to conduct a meaningful assessment of Michael's alleged damages" and was "unable to conduct an adequate evaluation of Michael's claim" prior to a lawsuit being filed. Atlantic is now subject to attorney fees under Neb. Rev. Stat. § 44-359 (Reissue 2010), as alleged in the appellants' complaint.

Based upon my review of the record, Atlantic produced evidence that it was prejudiced as a result of Michael's failure to provide a signed medical authorization and submit to an EUO. Michael presented no evidence to rebut these averments. As in *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 669 N.W.2d 462 (2003), Atlantic was therefore entitled to summary judgment. I would affirm the district court's order as to Michael in this regard.

- 472 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
SAIF v. ATLANTIC STATES INS. CO.
Cite as 29 Neb. App. 442

*Mary Sue's Claim.*

As to Mary Sue, she asserted in the complaint that she had made demand upon Atlantic for UIM benefits and that Atlantic had failed and refused to make payment to her. The evidence is uncontroverted, however, that she never made demand upon Atlantic prior to filing suit. The initial letter sent by Michael's attorney to Atlantic on November 6, 2014, does not reference Mary Sue or that she has a potential UIM claim. The demand letter of February 24, 2017, includes neither Mary Sue's name as a person represented nor a claim on her behalf. In fact, the letter refers solely to Michael as Atlantic's insured and the author attorney's client.

Having never received a demand, Atlantic could not have breached any obligation it owed to Mary Sue. That basis alone was sufficient to grant summary judgment to Atlantic. Additionally, Mary Sue failed to comply with the terms of the insurance policy that required her to make a demand for payment prior to filing suit. The majority concedes that this was a breach of the policy as a matter of law, and I agree. But like Michael's claim, the majority determines that Atlantic failed to prove it was prejudiced by this breach. I disagree, because Mary Sue presented no evidence to refute Atlantic's averments that it had been prejudiced. Additionally, Mary Sue's claim is derivative of Michael's; therefore, because his claim fails, so too does hers. See *Erickson v. U-Haul Internat.*, 278 Neb. 18, 767 N.W.2d 765 (2009).

I would affirm the order of the district court granting summary judgment in favor of Atlantic.